In the

# United States Court of Appeals
### For the Seventh Circuit

---

Nos. 05-1021 & 05-1226

CUNA MUTUAL INSURANCE SOCIETY,

*Plaintiff-Appellant*,

*v.*

OFFICE AND PROFESSIONAL EMPLOYEES
INTERNATIONAL UNION, LOCAL 39,

*Defendant-Appellee.*

---

Appeals from the United States District Court
for the Western District of Wisconsin.
No. 04 C 0138—**Barbara B. Crabb**, *Chief Judge*.

---

ARGUED SEPTEMBER 20, 2005—DECIDED MARCH 16, 2006

---

Before CUDAHY, KANNE, and ROVNER, *Circuit Judges*.

CUDAHY, *Circuit Judge*. The appellant CUNA Mutual Insurance Society (CUNA) brought an action in the district court to vacate part of an arbitration award in which the arbitrator determined that CUNA had violated its collective bargaining agreement (CBA) with the appellee Office and Professional Employees International Union, Local 39 (Local 39). The parties agreed to have the matter decided on cross-motions for summary judgment. After the parties filed their cross-motions and responses, Local 39 filed a motion for Rule 11 sanctions against CUNA. The district court denied CUNA's motion for summary judg-

ment, granted Local 39's motion for summary judgment and granted Local 39's motion for sanctions under Rule 11. CUNA now appeals only the portion of the district court's award that granted Local 39's motion for Rule 11 sanctions. For the following reasons, we affirm the judgment of the district court.

## I. Background

The plaintiff CUNA and the defendant Local 39 were parties to a CBA covering roughly 1400 CUNA employees, including about 150 who worked in a support services division providing housekeeping, cafeteria services and other maintenance services. The present case arose under this CBA, which became effective April 1, 2001 and expired on March 31, 2004. The plaintiff CUNA underwrites, markets and administers insurance and financial products for credit unions and their members. The defendant Local 39, a labor union, represents roughly 1,430 people employed by the plaintiff in Madison, Wisconsin.

Article XIX of the governing CBA details a procedure for grievance resolution. According to Article XIX, all grievances had to be put in writing and had to articulate the nature of the dispute, the relief sought and the specific article and section of the agreement alleged to be violated. The procedure required several steps to be taken to resolve the grievance before it went to arbitration. If the attempts at resolution were unsuccessful, either party could appeal the grievance to arbitration. Article XIX, Section 4 of the CBA states, "[t]he suggested relief and the article and section cited shall be considered a formal framing of the issue or remedy if the issue is arbitrated."

The procedure for selecting an arbitrator is set out in Article XIX, Section 5 of the CBA. This Section states that the "decision of the arbitrator shall be final and binding upon the Employer, the Union and the Employee(s) present-

ing the grievance." Additionally, "the arbitrator shall not change, but shall interpret only, the terms of this Agreement."

### A. Grievance Filing

On July 18, 2002, CUNA advised Local 39 of its intent to outsource twenty-two housekeeping jobs and three other positions as a cost-saving measure. Local 39 proposed alternative methods of cost saving that did not involve outsourcing work, but these were rejected. On August 20, 2002, Local 39 filed a grievance regarding layoffs that were impending. The grievance read, in relevant part:

> The Employer is implementing a layoff resulting in a reduction of the bargaining unit of up to 25 employees without showing such reduction is 'necessary' in accordance with Article XX, Section 1. . . . This grievance is also subject to any other contract violations determined after the investigation or grievance process begins.

The grievance did not mention any article or section of the agreement other than Sections 1 and 2 of Article XX.

On August 30, CUNA issued layoff notices to roughly twenty-two housekeeping or janitorial employees working in the support services department. CUNA cited the partial outsourcing of certain housekeeping or janitorial operations to independent contractors as the reason for the layoffs.

### B. Arbitration

Local 39 appealed the grievance to arbitration and a hearing was held on October 28, 2003. The arbitrator conducted a one-day hearing and subsequently issued a written decision on February 26, 2004. The arbitrator identified two main issues for resolution based on the

arguments of the parties: "(1) Whether the issue of the propriety of the Company's outsourcing of certain bargaining unit work in September 2002 is arbitrable"; and "(2) Whether, if the issue is arbitrable, the Company violated the parties' collective bargaining agreement when it outsourced that bargaining unit work and, if so, what is the appropriate remedy."

CUNA argued that the arbitrator did not have jurisdiction to address any outsourcing challenge because: "(1) the agreement required that a written grievance refer to the specific article and section allegedly violated; (2) the grievance in this dispute referred to Sections 1 and 2 of Article XX, which dealt exclusively with layoffs; and (3) Article XX did not prohibit outsourcing and was not concerned with the underlying causes of layoffs." CUNA further argued that the agreement was silent regarding the plaintiff's ability to outsource work. CUNA participated in the remainder of the arbitration, but did not waive its position that the arbitrator lacked the authority to rule on whether its outsourcing violated labor contract provisions not cited in the written grievance.

On February 26, 2004, Arbitrator Cohen issued a written decision on the issues. He first found that the case was properly before him. He noted that Article XX requires that any "lesser reduction" (i.e. less than fifty employees) of the bargaining unit be "necessary." To interpret "necessary," he found that the plaintiff had to show that there was a legitimate reason to justify the layoffs. He determined that the question whether outsourcing constituted a legitimate reason to justify the layoffs is necessarily encompassed in the grievance, and thus he had authority to rule on the outsourcing issue. He then ruled on the other issues. He found that CUNA's layoffs violated the layoff procedure, and also that the underlying outsourcing violated several provisions of the CBA.

Arbitrator Cohen ultimately sustained the grievance and directed, as a remedy, that the work be restored to the bargaining unit. He also directed the parties to attempt to resolve, themselves, whether employees suffered lost wages and benefits, and if so, whether and how much they should be compensated. He retained jurisdiction of this issue so that he could step in "to resolve any controversy" regarding implementation of the award.

Of note is an earlier arbitration award of November 23, 2002. In that case, Arbitrator Herbert Berman issued an arbitration award involving the same parties, in which he interpreted Article XIX, Section 5, of the contract as prohibiting the resolution of an issue not expressly raised in the grievance. This decision was never brought to Arbitrator Cohen's attention.

### C. District Court Action

In March 2004, CUNA brought an action in the Western District of Wisconsin to vacate the arbitration award in part. CUNA's lawsuit sought to vacate the portion of the award that held that the Company's outsourcing violates provisions of the CBA. It also sought to vacate the arbitration award's remedial provisions which advised the parties to privately resolve the issue of damages for affected employees. CUNA did not challenge the Arbitrator's ruling that the layoffs implemented by CUNA violated layoff procedures. The parties agreed to have the matter decided in the district court on cross-motions for summary judgment. Both parties filed cross-motions for summary judgment and responses to cross-motions for summary judgment. Local 39 also filed a motion for Rule 11 sanctions against CUNA, and separate briefing was provided on this issue.

On November 30, 2004, the district court entered an opinion and order denying CUNA's motion for summary

judgment and granting Local 39's motion for summary judgment and its motion for sanctions against CUNA under Rule 11. The district court awarded Local 39 attorneys' fees totaling $9,132.50 in a January 10, 2005 order based on the Rule 11 violation.

Here, CUNA appeals only the portion of the district court's award that granted Local 39's motion for Rule 11 sanctions. CUNA's appeal of the November 30, 2004 opinion and order (with respect to the award of Rule 11 sanctions) was instituted on December 20, 2004. CUNA's appeal of the January 14, 2005 entry of judgment (with respect to the award of Rule 11 sanctions) was instituted on January 26, 2005. This Court consolidated these appeals by order on February 2, 2005.

## II.  Discussion

We review a district court's decision to impose Rule 11 sanctions using an abuse of discretion standard. *Cooter & Gell v. Martmarz Corp.*, 496 U.S. 384, 405 (1990); *Corley v. Rosewood Care Center Inc. of Peoria*, 388 F.3d 990, 1013-14 (7th Cir. 2004) ("Because the district courts have the best information about the patterns of their cases, they are in the best position to determine whether a legal position is far enough off the mark to be frivolous or whether an attorney conducted an adequate inquiry under the particular circumstances of a case."); *Mars Steel Corp v. Continental Bank N.A.*, 880 F.2d 928, 933 (7th Cir. 1989) (en banc).

Under Rule 11, the district court may impose sanctions if a lawsuit is "not well grounded in fact and is not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." *National Wrecking Co. v. Int'l Brotherhood of Teamsters, Local 731*, 990 F.2d 957, 963 (7th Cir. 1993). The court must "undertake an objective inquiry into whether the party or his counsel

should have known that his position is groundless." *Id.*, *quoting CNPA v. Chicago Web Printing Pressmen's Union No. 7*, 821 F.2d 390, 397 (7th Cir. 1987) (citations omitted). Rule 11(c) of the Federal Rules of Civil Procedure allows courts to impose sanctions on a party if the requirements of Rule 11(b) are not met. Rule 11(b)(2) requires that "the claims, defenses, and other legal contentions [of filings] are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law."

Not only do we have to consider the general Rule 11 sanction principles in this case, but we must also consider the long line of Seventh Circuit cases that have discouraged parties from challenging arbitration awards and have upheld Rule 11 sanctions in cases where the challenge to the award was substantially without merit. *See, e.g.*, *Bailey v. Bicknell Minerals, Inc.*, 819 F.2d 690, 691 (7th Cir. 1987); *Hill v. Norfolk and Western Ry.*, 814 F.2d 1192 (7th Cir. 1987); *Machinists & Aerospace Workers v. Clearing*, 807 F.2d 618 (7th Cir. 1986); *Dreis & Krump Manufacturing Co. v. Int'l Assoc. Machinists District 8*, 802 F.2d 247, 255-56 (7th Cir. 1986). In *Dreis & Krump Manufacturing Co.*, 802 F.2d at 255-56 this Court said:

> A company dissatisfied with the decisions of labor arbitrators need not include an arbitration clause in its collective bargaining contracts, but having agreed to include such a clause it will not be permitted to nullify the advantages to the union by spinning out the arbitral process unconscionably through the filing of meritless suits and appeals. For such conduct the law authorizes sanctions that this court will not hesitate to impose. Mounting federal caseloads and growing public dissatisfaction with the costs and delays of litigation have made it imperative that the federal courts impose sanctions on persons and firms that

abuse their right of access to these courts. . . . Lawyers practicing in the Seventh Circuit, take heed!

The precedent is clear and emphatic and directs us to uphold sanctions in a broad spectrum of arbitration cases. The "filing of meritless suits and appeals" in arbitration cases warrants Rule 11 sanctions. We are thus compelled to uphold the lower court's award of sanctions against CUNA. We find that CUNA's claims were meritless and were very unlikely to succeed in the lower court based on the straightforward case law relevant to these claims.

### A. Arbitrability Issue

CUNA's ability to avoid Rule 11 sanctions is difficult not only because of the deferential standard by which we evaluate a district court's award of such sanctions, but also because both our court and the Supreme Court have held that judicial review of arbitration awards is limited. *See Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 706 (7th Cir. 1994) ("Judicial review of arbitration awards is tightly limited; perhaps it ought not be called 'review' at all."). A court must uphold an arbitrator's decision as long as it "draws its essence from the collective bargaining agreement" and is not merely the arbitrator's "own brand of industrial justice." *United Paper Workers Int'l Union et al. v. Misco*, 484 U.S. 29, 36 (1987), *quoting Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596 (1960). An award does not draw its essence from the collective bargaining agreement "only when the arbitrator must have based his award on some body of thought, or feeling, or policy, or law that is outside the contract." *Arch of Illinois v. District 12, United Mine Workers of America*, 85 F.3d 1289, 1292 (7th Cir. 1996), *quoting Polk Bros v. Chicago Truck Drivers Union*, 973 F.2d 593, 597 (7th Cir. 1992). An arbitrator may, however, look to sources other than the CBA for guidance. *Anheuser-Busch, Inc. v. Beer,*

*Soft Drink Local Union No. 744*, 280 F.3d 1133, 1137 (7th Cir. 2002) (quoting *Tootsie Roll Indus., Inc. v. Local Union #1*, 832 F.2d 81 (7th Cir. 1987)).

This court has ruled that it is not our job to decide if an arbitrator erred in interpreting a labor contract, even if the error was significant. Instead, we will only determine if the arbitrator did indeed interpret the contract. *Hill v. Norfolk & Wesleyan Railway Co.*, 814 F.2d 1192, 1195 (7th Cir. 1987). Thus, a petitioner will not prevail unless he can prove that "there is no possible interpretive route to the [arbitrator's] award, so a non-contractual basis can be inferred." *Arch of Illinois*, 85 F.3d at 1293-94, *quoting Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc.*, 935 F.2d 1501, 1506 (7th Cir. 1991).

Here, the interpretive route is easy to follow. CUNA argues that Arbitrator Cohen exceeded his authority by finding that CUNA's outsourcing violated contractual provisions because his ruling considered provisions of the CBA other than those cited by Local 39 in its grievance. However, Arbitrator's Cohen's decision to consider the outsourcing issue is reasonable and clearly "draws its essence from the collective bargaining agreement," and is not merely Arbitrator Cohen's "own brand of industrial justice." *United Paper Workers Int'l Union et al.*, 484 U.S. at 36. Arbitrator Cohen found that because Local 39 alleged in the grievance that CUNA failed to show that the layoffs were necessary, he had to examine CUNA's reason underlying the layoffs to determine whether or not the layoffs were necessary. Since the plaintiff claimed the layoffs were necessary due to outsourcing, outsourcing was within the scope of what Arbitrator Cohen had to address to deal thoroughly with the grievance. There was no provision in the articles cited in the grievance that specifically endorsed outsourcing. Thus, Cohen looked to other articles in the CBA.

This reasoning fits within the guidelines of the provision in question, the scope of authority provision in Article XIX, Section 4 of the CBA. The layoffs did constitute the formal framing of the issue, but since the necessity of the layoffs was also at issue per the grievance, and outsourcing was cited by CUNA as the reason the layoffs were necessary, outsourcing was necessarily at issue as well. Nothing in the CBA said that an arbitrator could not consider other parts of the agreement. The CBA simply said that all considerations must relate to what was in the grievance, and here they did so relate. In other words, the layoffs (and their necessity) constituted the "formal framing" of the issue being arbitrated, but since outsourcing was related to the necessity of the layoffs, the arbitrator was able to address outsourcing as well.

Because Arbitrator Cohen's interpretive route was easy to follow and the case law upholding the deferential treatment courts accord arbitration awards is clear, extensive, and readily available, the district court's decision to apply Rule 11 sanctions to CUNA was proper.

CUNA attempts to sidestep the deferential standard under which arbitration awards are reviewed and to justify its challenge to the arbitration award, by arguing that it was not challenging Arbitrator Cohen's interpretation of the CBA, but instead whether the issue of its subcontracting was arbitrable. A question of arbitrability, as opposed to an interpretation of a CBA, is "undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T Technologies v. Communications Workers*, 475 U.S. 643, 649 (1986). Thus, if there were a true question of arbitrability, our analysis

might be different.[1]

However, we agree with the district court that there was not a true question of arbitrability in this case. Instead, CUNA "dresses up its arguments about the scope of the arbitrator's authority in arbitrability clothing." *CUNA Mutual Insurance Society v. Office and Professional Employees International Union, Local 39*, 2004 U.S. Dist. LEXIS 24120, at *15 (W.D. Wis. Nov. 29, 2004). CUNA's argument that the clause in question is an arbitration clause is, to put it mildly, stretching a point. The provision at issue, Article XIX, Section 4 of the CBA, reads, "the article and section cited [in the grievance] shall be considered a formal framing of the issue or remedy if the issue is arbitrated." CUNA argues that the above language results in a case-by-case substantive limit on disputes that can be submitted to arbitration. Thus, CUNA reasons, because Local 39's grievance did not mention subcontracting, but instead

---

[1] We note that even if there was a question of arbitrability in this case, Rule 11 sanctions may still apply. The Supreme Court held, "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[an] order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT&T Technologies Inc. v. Communications Workers of America et al.*, 475 U.S. 643, 650 (1986), *quoting Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960). Here, it would be difficult to argue with "positive assurance" that the provision of the CBA at issue is not susceptible to an interpretation that covers the asserted dispute. The provision does not state that arbitrating the subcontracting issue is prohibited. It merely states that the article and section cited in the grievance should be the "formal framing" of the issue or remedy. In other words, the article and section cited need only provide an orderly outline of the issue.

mentioned only layoffs, Article XIX, Section 4 prevented the arbitrator from reaching the subcontracting issue and it was not arbitrable. But CUNA's interpretation of the language of this provision is erroneous.

The final part of the clause, "if the issue is arbitrated," implies that the clause in question applies to issues that have already been designated as arbitrable. Additionally, true arbitrability clauses tend to use language that excludes specific subject matters from arbitration. Here, the provision only defines the scope of the arbitrator's inquiry; it does not impose a substantive limit on what is to be arbitrated. This scope is open to interpretation by the arbitrator, and as we have discussed above, Arbitrator Cohen's interpretive route was reasonable and easy to follow.

Case law supports the above reasoning and not that of CUNA. In *Dreis & Krump Manufacturing Co. v. Int'l Assoc. of Machinists*, 802 F.2d 247, 253 (7th Cir. 1986) an employer argued that even though there was no express language in the agreement that limited subcontracting, the management rights clause of the contract allowed the company to subcontract and precluded the issue from arbitration. Like the present case, the company argued that a clause that did not specifically address subcontracting (the management rights clause) nonetheless made subcontracting non-arbitrable. However, the court found the issue was really one of interpretation of the agreement and not one of arbitrability, stating "[a]ll the company is left with is a disagreement with the arbitrator over the precise meaning of the agreement in the circumstances of the present case." *Id.* at 253. The court then applied the deferential standard of review used in arbitration cases which involve CBA interpretations and found against the employer, ruling that Rule 11 sanctions in the form of attorneys' fees should apply.

CUNA argues *Dreis* can be distinguished from the present case because, unlike the company in *Dreis*, CUNA raised its arbitrability objection prior to the hearing and therefore preserved judicial review. This argument involves a hasty reading of *Dreis*. The court there explicitly rejected this argument, stating that even assuming *arguendo* the employer had timely challenged the arbitrability of the dispute, "the management rights clause does not so clearly withdraw the subject of subcontracting from the scope of the arbitration clause as to deprive the arbitrator of jurisdiction." *Dreis*, 802 F.3d at 252-53. Thus, a thorough reading of *Dreis* should have provided CUNA with further evidence that a challenge to the Arbitrator Cohen's decision would fail.

CUNA's strongest argument regarding arbitrability is that in 2002, a different arbitrator issued an arbitration award involving the same parties, but with respect to a different issue. This arbitrator interpreted Article XIX, Section 5 of the agreement (the clause at issue here) as prohibiting the resolution of an issue not expressly raised in the grievance. CUNA reasons that based on this decision, it had reason to believe that Cohen exceeded his authority by arbitrating the subcontracting issue. However, the precise circumstances and facts surrounding the earlier grievance were presumably different. More significantly, we have held that it does not matter if an arbitrator's interpretation of a CBA is flawed, just so long as it is an interpretation. *See, e.g.*, *E.I. DuPont de Nemours & Co. v. Grasselli Employees Independent Ass'n of East Chicago, Inc.*, 790 F.2d 611, 614 (7th Cir. 1986) ("[T]he judiciary has no power to reach and determine the merits of arbitration awards merely because of disagreement, even strong disagreement, with the arbitrator's interpretation of the contract. As here, so long as the arbitrator interpreted the contract in making his award, his award must be affirmed even if he clearly misinterpreted the contract."). Even if one arbitrator

interpreted the agreement one way, and a different arbitrator interpreted the agreement another way, we need not decide which interpretation is correct. Case law could not be more clear: courts should not overrule an arbitrator's interpretation of an arbitration agreement unless "there is no possible interpretive route to the [arbitrator's] award, so a non-contractual basis can be inferred." *Arch of Illinois v. District 12, United Mine Workers of America*, 85 F.3d 1289, 1293-94 (7th Cir. 1996), *quoting Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc.*, 935 F.2d 1501, 1506 (7th Cir. 1991).

## B. *Retention of Jurisdiction*

In the district court, CUNA argued that Arbitrator Cohen erred by retaining jurisdiction to address damages issues. CUNA did not raise this issue here. However, Local 39 raised it in its brief, and it contributed to the district court's decision to impose Rule 11 sanctions of CUNA. Thus, we will give it brief attention.

After directing that work be restored to the bargaining unit and tentatively awarding the affected employees lost wages and benefits, Arbitrator Cohen noted that the parties disputed whether the affected employees had in fact lost any wages and benefits, and that the record regarding damages was not developed. He therefore directed the parties to try to resolve the issues themselves, but he retained jurisdiction so that he could settle disputes regarding the implementation of his award.

The *functus officio* doctrine holds that "after a final decision by an arbitrator, the arbitrator becomes *functus officio* and lacks the power to reconsider or amend the decision." *Anderson v. Norfolk & Western Ry. Co.*, 773 F.2d 880, 883 (7th Cir. 1985), *quoting A/S Siljestad v. Hideca Trading, Inc.*, 541 F.Supp. 58, 61 (S.D.N.Y 1981), *aff'd*, 678

F.2d 391 (2d Cir. 1982) (per curiam). However, the present case falls within the "clarification-completion" exception to the *functus officio* doctrine, which allows arbitrators to clarify an award already made. In *Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union, Local 182B v. Excelsior Foundry Co.*, 56 F.3d 844 (7th Cir. 1995) this court rejected a company's argument that clarification of an award was forbidden by the *functus officio* doctrine after the arbitrator had issued his opinion and award. Additionally, there is an abundance of case law in both this circuit and other circuits that recognizes the propriety of an arbitrator retaining jurisdiction over the remedy portion of an award. *See, e.g.*, *Dreis & Krump Mfg. v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 8,* 802 F.2d 247, 250 (7th Cir. 1986); *Department of the Navy v. Federal Labor Relations Auth.*, 815 F.2d 797, 802 (1st Cir. 1987); *Engis Corp. V. Engis Ltd.*, 800 F. Supp. 627 (N.D. Ill. 1992).

The case law on this issue is clear, and CUNA's counsel "should have known that [its] position is groundless." *National Wrecking Co. v. Int'l Brotherhood of Teamsters, Local 731*, 990 F.2d 957, 963 (7th Cir. 1993), *quoting CNPA v. Chicago Web Printing Pressmen's Union No. 7*, 821 F.2d 390, 397 (7th Cir. 1987) (citations omitted). The fact that CUNA's lawyers did not discuss this claim in its appellate brief suggests that perhaps they knew this argument was flawed. This aborted claim further justifies the district court's decision to apply Rule 11 sanctions to CUNA.

## III.  Conclusion

In sum, we AFFIRM the Rule 11 sanctions applied to CUNA by the district court and order CUNA to pay the reasonable attorney fees Local 39 incurred as a result of being forced to litigate this matter, as directed by the district court.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*