In the
United States Court of Appeals
For the Seventh Circuit

Nos. 01-2307 & 01-2791

Lyne Brunt, David Wadinski
and John Wittenberg,

Plaintiffs-Appellants,
Cross-Appellees,

v.

Service Employees International Union
and Dan Iverson,

Defendants-Appellees,
Cross-Appellants.

Appeals from the United States District Court
for the Eastern District of Wisconsin.
No. 00-C-317--Lynn Adelman, Judge.

Argued January 16, 2002--Decided March 21, 2002


   Before Bauer, Rovner and Williams, Circuit
Judges.

   Bauer, Circuit Judge.  Appellants Lyne
Brunt, David Wadinski and John Wittenberg
filed suit against Service Employees
International Union and Union President
Dan Iverson, complaining of violations of
the Labor Management Reporting and
Disclosure Act (LMRDA) and state law
because Iverson terminated Appellants'
employment when they refused to support
Iverson's re-election as union president.
The district court granted the Union's
Rule 12(c) motion to dismiss the case and
denied Appellants' motion for leave to
amend their complaint. The district court
also denied the Union's motion for Rule
11 sanctions against Appellants' counsel.
Both parties now appeal the district
court's rulings. For the following
reasons, we affirm the decisions of the
district court.

BACKGROUND
   Brunt, Wadinski and Wittenberg were
full-time members of the Union. They were
also employed by the Union as union
representatives and their
responsibilities included settling and
arbitrating grievances, negotiating labor

agreements and representing the Union in organization campaigns. In addition, in late 1997, Brunt was promoted to assistant to the union president. In this capacity, her additional duties included assisting other union representatives in bargaining, as well as overseeing troubled facilities. Brunt, Wadinski and Wittenberg each paid their union dues and as a result, they were entitled to the full benefits of union protection regarding the terms and conditions of their employment.

In the spring of 1998, Union President Dan Iverson ran for re-election. Iverson told union members that anyone who ran against him in the presidential election would be fired. Wadinski ran against Iverson in the election. Wittenberg refused to support Iverson and instead, openly supported Wadinski. Iverson asked Brunt for her support, but she refused. Instead, Brunt informed Iverson that she intended to remain "neutral" in the election. Iverson responded that Brunt's "neutral" stance was a dangerous position that could have "possible repercussions" for her future career.

In May of 1998, the union membership re-elected Iverson as Union President. Wadinski and Wittenberg were discharged at Iverson's direction on June 29, 1998 because they had challenged him in the presidential election. Brunt was discharged on August 21, 1998 because of her decision to remain neutral in the election. Appellants' request for a grievance hearing from the Union was denied.

On March 2, 2000, Brunt filed a complaint in federal court, charging the Union and Iverson with violating Title I of LMRDA. The complaint asserted that Brunt was terminated from her position as an appointed union representative for exercising her rights to free speech and that this discipline resulted in the termination of her rights and status as a union member. In June, Brunt amended her complaint, adding Wadinski and Wittenberg as plaintiffs.

On April 18, 2001, the district court granted the Union's Rule 12(c) motion to dismiss Appellants' complaint. The court found that the instant case was indistinguishable from Finnegan v. Leu,

456 U.S. 431 (1982), in which the United States Supreme Court held that LMRDA does not restrict the power of a union president to hire his or her own staff. The district court also denied Appellants' motion for leave to amend their complaint to add an additional LMRDA violation.

On April 30, 2001, the Union moved for reasonable attorney's fees and costs incurred in defending this litigation on the grounds that the Appellants' claims were not warranted by either existing law or a non-frivolous argument for the extension of existing law. The district court denied the motion. This appeal and cross-appeal followed.

DISCUSSION

A.  Dismissal of Appellants' Complaint

Appellants first argue that the district court erred in granting the Union's Rule 12(c) motion to dismiss the complaint on the grounds that Finnegan barred their claim. Under Rule 12(c), a party can move for judgment on the pleadings after the filing of both the complaint and answer. Fed. R. Civ. P. 12(c). A court will grant a Rule 12(c) motion only when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved. N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449, 452 (7th Cir. 1998). We review a district court's ruling on a Rule 12(c) motion de novo. Id.

Title 1, section 101(a)(2) of LMRDA grants union members the rights of freedom of speech and assembly, including the right to "express any views, arguments or opinions." 29 U.S.C. sec. 411(a)(2). In addition, section 609 provides that a union and its officers may not fine, suspend, expel or otherwise discipline any union members for exercising such rights to free speech and assembly. 29 U.S.C. sec. 529. Appellants claim that they were subject to unlawful discipline under these provisions when Iverson ordered their termination.

In Finnegan v. Leu, the United States Supreme Court examined the language of LMRDA and held that sections 101 and 609

"[do] not restrict freedom of an elected union leader to choose a staff whose views are compatible with his own." Finnegan, 456 U.S. at 441. The Court noted that nothing in the language of LMRDA or the legislative history suggests that it was intended to address the issue of union patronage; rather, LMRDA's objective was "to ensure that unions would be democratically governed and responsive to the will of the union membership." Id. The Court concluded that "the ability of an elected union president to select his own administrators is an integral part of ensuring a union administration's responsiveness to the mandate of the union election." Id.

In Hodge v. Local Union 695, 707 F.2d 961 (7th Cir. 1983), we reviewed a LMRDA claim and reiterated the Supreme Court's holding in Finnegan. The claimant in Hodge asserted that she was wrongfully dismissed from her union employment when she failed to openly support the union's new administration. The district court dismissed her claim and we affirmed. In so doing, we determined that the union leadership discharged her because her views were incompatible with the new administration's policy and Finnegan plainly allows union leadership to act on such a conviction. Id. at 964. Further, we noted that the Finnegan holding applies even where the union employee simply remained neutral, rather than openly campaigning against a new union administration. Id.

In the instant case, Appellants argue that their rights under LMRDA were violated when they were discharged from their positions for their refusal to support Iverson in the union elections. We agree with the district court that this case falls squarely within the mandates of Finnegan and Hodge. As president of the Union, Iverson could legally terminate Appellants' employment for their failure to support his re-election. As we stated in Hodge, even if Brunt did not openly oppose Iverson's campaign, Iverson was still within the legal boundaries when he discharged her for refusing to support him. Finnegan makes clear that when union membership has elected a leader, that leader has a right to select his own employees. Accordingly, the district court properly

dismissed Appellants' complaint.

Nevertheless, Appellants assert that their case is distinguishable from Finnegan and Hodge because when Iverson terminated their employment, their status as union members was terminated as well. They argue that because Finnegan only permits the Union to affect or terminate their employment, not their membership status as a whole, they were improperly disciplined under section 609 and their complaint sets forth a valid cause of action. This argument is unpersuasive.

Appellants are correct in their assertion that section 609 prohibits any discipline or retaliation that affects a union member's rights or status, but any effect Iverson's actions had on Appellants' status as union members was merely incidental and does not fall within the scope of prohibited activity in section 609. As Union President, Iverson had the right to remove Appellants from their positions in hisadministration and that right is not affected by the fact that Appellants' union memberships were also terminated. Discharge from union employment does not violate LMRDA even if it has an indirect effect on union membership rights. Finnegan, 435 U.S. at 440-41. Appellants lost their union membership only because it was wholly contingent on their union employment, not because Iverson or the Union terminated their membership status. The district court properly held that Iverson is not liable for any incidental consequences of his legal acts.

B.  Leave to Amend the Complaint

Appellants also argue that the district court erred when it denied their motion for leave to amend their complaint. They insist that leave was necessary in the interest of justice because the additional claim stated a new, valid theory of liability that would have precluded dismissal of the complaint. We disagree.

Rule 15(a) provides that leave to amend a pleading shall be freely given when justice so requires. Fed. R. Civ. P. 15(a). However, this right is not absolute and is appropriately denied when, among other reasons, the amendment would be futile. Wilson v. Am. Trans Air, Inc., 874 F.2d

386, 392 (1989). Moreover, the decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court. J.D. Marshall Int'l Inc. v. Redstart, Inc., 935 F.2d 815, 819 (7th Cir. 1991). Accordingly, a district court's denial of a Rule 15(c) motion will be overturned on appeal only if it is shown that the district court abused its discretion by refusing to grant the leave without any justifying reason. Id.

Appellants moved to amend their complaint to add factual allegations and assert a violation of section 102 of Title I of LMRDA. This section permits any union member to sue for relief if he or she was discharged as part of a purposeful and deliberate attempt to suppress dissent within the union. See, e.g., Stroud v. Senese, 832 F.Supp. 1206, 1213 (N.D. Ill. 1993). Appellants argue that they have set forth a valid retaliatory cause of action because the Union discharged them in order to intimidate other union members and stifle any dissent.

We find Appellants' argument that the amended complaint asserts a new theory of liability to be without merit. Appellants' proposed amendment merely adds several factual allegations to their central claim that they were terminated for not supporting Iverson's re-election. We agree with the district court that even with these additional factual allegations, the complaint fails to support a claim under section 102. The amended complaint added allegations that Iverson made various ultimatums regarding the Appellants' refusal to support his re-election; however, these additions do not amount to a showing of a pattern of stifling dissent within the union. In fact, these ultimatums were precisely what the Finnegan holding grants Iverson the right to do, i.e., fire any employees on the basis of their disloyalty to him. Nothing in LMRDA subjects him to liability for such ultimatums. Because Appellants' amended complaint would not survive a motion to dismiss, the amendment would be futile and the district court was well within its discretion in refusing to grant leave to amend.

C. Sanctions

Finally, the Union argues on cross-appeal that the district court erred in refusing to impose Rule 11 sanctions against Appellants. The Union insists that because Appellants' complaint contradicts existing case law, they failed to set forth a non-frivolous argument and sanctions are warranted. We review the district court's decision to impose Rule 11 sanctions for an abuse of discretion. Cooter & Gell v. Hartmax Corp., 496 U.S. 384, 405 (1990).

Rule 11 imposes a duty on attorneys to ensure that any papers filed with the court are well-grounded in fact, legally tenable, and not interposed for any improper purpose. Id. at 392. The rule is principally designed to prevent baseless filings. Id. Sanctions will be imposed if counsel files a complaint with improper motives or without adequate investigation. Mars Steel Corp. v. Cont'l Bank, 880 F.2d 928, 932 (7th Cir. 1989). Even "objectively frivolous filings support but do not compel an inference of unreasonable investigation." Id. at 933.

We agree with the district court that the circumstances in this case do not warrant sanctions. Although Appellants' claims were barred by existing Supreme Court and Seventh Circuit case law, it does not follow that sanctions must be imposed. Appellants did attempt to distinguish their case from Finnegan and Hodge, and we defer to the district court's finding that Appellants' complaint was not so frivolous that Rule 11 sanctions are warranted.

CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.