**Cammille SORRELL, Plaintiff–Appellant,**

v.

**AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, Defendant–Appellee.**

No. 02–2909.

United States Court of Appeals, Seventh Circuit.

Submitted Nov. 21, 2002.*

Decided Nov. 22, 2002.

---

* After an examination of the briefs and the record, we have concluded that oral argu-

Before BAUER, POSNER, and DIANE P. WOOD, Circuit Judges.

## ORDER

Cammille Sorrell filed a complaint against her union, the American Federation of State, County, and Municipal Employees (AFSCME) because it delayed distributing her "fair share fees" to her chosen charity. She claimed violations of the First and Fourteenth Amendments. The district court entered judgment on the pleadings, Fed.R.Civ.P. 12(c), because Sorrell failed to state a violation of federal law. She appeals the dismissal and we affirm.

Sorrell worked for the Illinois Department of Public Aid (IDPA) from May 1999 until January 2001. AFSCME is a labor organization that represents IDPA employees. Sorrell was required to pay "fair share fees," often referred to as "agency fees" in federal case law, to AFSCME under a provision of the Illinois Public Labor Relations Act (IPLRA) that was designed to eliminate free riders who would benefit from union representation without paying for it. *See* 5 Ill. Comp. Stat. 315/6(a), (g) (2002). *See generally Tavernor v. Ill. Fed'n of Teachers*, 226 F.3d 842, 844 (7th Cir.2000), and *Wegscheid v. Local Union 2911*, 117 F.3d 986, 987 (7th Cir.1997). In March 2000 Sorrell notified AFSCME that paying the fees conflicted with her religious beliefs as a Seventh Day Adventist. Unsatisfied with AFSCME's response that it was too busy to address her claim, Sorrell filed a charge with the Illinois Labor Relations Board in September 2000 alleging unfair labor practices. Five months later Sorrell received a list of approved charities to which she could have her fees sent. She selected one, and in August 2001 AFSCME sent her accumulated fees and interest to the charity.

In January 2002 Sorrell filed a complaint in federal district court under 42 U.S.C. § 1983 alleging that the union violated her First Amendment rights to "reli-

ment is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

gious expression and nonassociation" and her Fourteenth Amendment right to due process when it delayed donating her fair share fees and caused her to incur transaction costs to force the donation. AFSCME moved for judgment on the pleadings, see Fed.R.Civ.P. 12(c), arguing that Sorrell's complaint failed to state a claim because charging fair share fees comports with the First Amendment. The district court agreed and we review its Rule 12(c) dismissal *de novo* to determine whether it appears beyond doubt from the pleadings that Sorrell can prove no set of facts justifying relief. *Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 718–19 (7th Cir.2002). Sorrell also argues for the first time in her brief that the IPLRA is invalid because it is unconstitutionally vague.

Without expressing an opinion about whether AFSCME is a state actor for purposes of § 1983, we find that Sorrell has failed to allege a violation of federal law. The Supreme Court has held that employees can be required to contribute fair share fees to compensate unions for their representational activities. *See, e.g., Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507, 519, 111 S.Ct. 1950, 114 L.Ed.2d 572 (1991). A line is drawn for First Amendment purposes between fair share fees, which pay for representational or collective-bargaining activities, and full union dues that often support nonrepresentational activities. Unions cannot force employees to pay for "the support of ideological causes not germane to its duties as collective-bargaining agent." *See Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 235–36, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977); *Chicago Teachers Union v. Hudson*, 475 U.S. 292, 294, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986); *Tavernor*, 226 F.3d at 844.

At no time has Sorrell alleged that the union collected any money from her for nonrepresentational activities. To the contrary, she says repeatedly that the union collected "fair share fees," a term used by this court and the Illinois legislature to refer to fees used solely for representational activities. *See Tavernor*, 226 F.3d at 844; 5 Ill. Comp. Stat. 315/3(g). If Sorrell were claiming that the union collected full union dues from her, including fees to support political campaigns, she might have a claim under the First Amendment. But nowhere in her complaint does she make any suggestion that the union used her money improperly to support political activity or collected more than the allowable fair share fee.

Sorrell's citations to the IPLRA do not help her case. The IPLRA says that unions may protect a nonmember's religious-based right of nonassociation with the union by donating her fair share fees to charity. *See* 5 Ill. Comp. Stat. 315/6(g) (2002). Had AFSCME failed to deliver Sorrell's money to her designated charity, she could complain only of a violation of state law or her collective bargaining agreement. But AFSCME certainly was not compelled by federal law to donate Sorrell's fees, and could have delayed the donation indefinitely without offending the First Amendment.

Sorrell relies heavily on our decision in *Tavernor*, but that case is equally unhelpful to her. In *Tavernor* we held that union procedures violated the First Amendment because the union was collecting full union dues from the plaintiff, including money to support political activity. *See Tavernor*, 226 F.3d at 845–46, 848. Only when a union collects money for nonrepresentational purposes must it follow the procedure outlined in *Tavernor* because, as noted above, First Amendment rights are adequately protected when unions collect only fair share fees.

Sorrell also claims a Fourteenth Amendment due process violation. Such a claim must allege a deprivation of a liberty or property interest, *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), which can arise under federal or state law, *Villanova v. Abrams,* 972 F.2d 792, 798 (7th Cir.1992). Sorrell identifies no recognizable interest that would require due process protection. In passing she suggests that she had a "liberty interest" in having her fees placed into an escrow account while her objection to their disposition was settled, but fair share fees need not be placed in an escrow account unless an employee contends that the union is collecting fees exceeding the member's share of representational costs. *See Tavernor,* 226 F.3d at 851. Sorrell has never suggested that.

Finally, Sorrell argues on appeal that the IPLRA is invalid because it is unconstitutionally vague. She waived this argument by not raising it in the district court. *See Gagan v. Am. Cablevision, Inc.,* 77 F.3d 951, 966 (7th Cir.1996). In addition, she may have intended to abandon this issue by beginning her reply brief saying "[t]his case essentially address one major issue in dispute" and then discussing her First Amendment claim.

The judgment of the district court is AFFIRMED.