In the

# United States Court of Appeals

## For the Seventh Circuit

No. 06-3529

VIVIAN BROWN,

*Plaintiff-Appellant,*

*v.*

FAMILY DOLLAR STORES OF INDIANA, LP,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division
No. 04 C 2015—**Larry J. McKinney**, *Judge.*

ARGUED NOVEMBER 9, 2007—DECIDED JULY 15, 2008

Before CUDAHY, RIPPLE, and ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge.* Plaintiff-Appellant Vivian Brown brought an action against her former employer, Family Dollar Stores of Indiana, LP ("Family Dollar"), alleging that Family Dollar failed to pay in a timely manner overtime wages due her in violation of the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. 201 et seq., the Indiana Wage Payment Statute, Ind. Code § 22-2-5-1 et seq., and the Indiana Wage Claim Statute, Ind. Code § 22-9-1 et seq. The district court granted Family Dollar's motion for summary judgment on the FLSA claim and the state

claim for an unpaid incentive bonus, and dismissed the remaining state claims without prejudice. Brown now appeals that decision, and we reverse.

Family Dollar owns and operates a chain of retail stores. Brown was hired as a cashier/stock person in August 2003. She subsequently was promoted to assistant manager, with a corresponding increase in hourly pay. On approximately November 24, 2003, Family Dollar terminated the manager at the store in which Brown worked. As assistant manager, Brown then took on some of the responsibilities of the store manager, but remained an employee paid on an hourly basis and eligible for overtime pay. There were two other employees who worked at the store in addition to Brown, but they filled the positions of clerk and stock persons. The store remained without a store manager until January 8, 2004, when Family Dollar promoted Brown to store manager. Pursuant to Brown's request, she was transferred to a different Family Dollar store in April 2004, and in May 2004, she was terminated by the company.

Brown alleged that she was not properly compensated for overtime during the time she worked at Family Dollar. The FLSA provides that employees who work more than forty hours in a week must be paid for the excess hours at one and one-half times the regular rate of pay. 29 U.S.C. § 207(a)(1). An employee bears the burden of proving that she performed overtime work for which she was not properly compensated. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946), superseded by statute on other grounds as stated in *IBP, Inc. v. Alvarez*, 546 U.S. 21, 41 (2005). The district court held that " 'while this burden is not an insurmountable one, an employee who brings suit for unpaid overtime compensa-

tion bears the burden to prove, with definite and certain evidence, the she performed work for which she was not properly compensated.' " Dist. Ct. op. at 5-6, *citing Anderson*, 328 U.S. at 686-87; *Reeves v. IT & T Corp.*, 616 F.2d 1342, 1351 (5th Cir. 1980), *implicitly overruled on other grounds as recognized in Heidtman v. County of El Paso*, 171 F.3d 1038, 1042 n.4 (5th Cir. 1999). Brown was unable to identify with specificity the hours or even days for which she worked overtime that was not properly paid. Accordingly, the district court concluded that Brown's general allegations were insufficient to meet that burden and granted summary judgment in favor of Family Dollar.

*Anderson*, however, does not set forth a new "definite and certain evidence" standard but merely recognized the established requirement that damages be proven. *Anderson* recognized that once a plaintiff establishes a violation of the FLSA, the plaintiff must establish damages, and that the task is not a difficult one where the employer has kept time records in compliance with the requirements of the FLSA. In that circumstance, the accurate time records will establish the amount of damages, and the general rule that precludes recovery of uncertain and speculative damages is appropriate. *Anderson*, 328 U.S. at 688. That is a recognition of the need to quantify damages, not a new, more burdensome standard. *Anderson* also articulated, however, a different standard that was to apply where the employer's records did not provide that accurate record of time worked.

*Anderson* recognized that where an employer failed to keep the proper and accurate records required by the FLSA, the employer rather than the employee should bear the consequences of that failure. To place the burden on the employee of proving damages with specificity

would defeat the purpose of the FLSA where the employer's own actions in keeping inadequate or inaccurate records had made the best evidence of such damages unavailable. The Court accordingly held that "[i]n such a situation, . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* at 687-88. The burden then would shift to the employer to produce evidence of the precise amount of work performed or to negate the reasonableness of the inference to be drawn from the employee's evidence. *Id.* If the employer fails to meet that burden, a court may award damages even though they are approximations. *Id.* at 688.

The district court in this case recognized the just and reasonable inference test set forth in *Anderson*, but deemed it inapplicable because it concluded that "Brown does not allege that Family Dollar's records are not in accord with FLSA requirements." The record, however, demonstrates that Brown presented evidence that the records were not in compliance with the FLSA and could not be trusted. First, Brown introduced evidence that the records were accurate when submitted by employees, but were subsequently altered by management prior to issuance of the paychecks. Specifically, Brown testified in her deposition that managers, district managers, and assistant district managers could manipulate the records of times worked in the computer system. She testified that as a manager, she personally observed employees paychecks that were not reflective of the times in the printouts and e-mails that she had sent to payroll. She further declared that when she reported that a person's check

was short, she was given the response that they were not going to get paid. Finally, Brown also testified that she had the same experience when LaTasha Holder was the store manager, with Brown's own paycheck not reflecting the hours on the printout. That evidence alone is sufficient to raise a genuine issue of fact regarding the accuracy of the records kept by Family Dollar, but Brown provided additional evidence that the time records were inadequate or inaccurate.

Brown provided evidence that the hours in the employer's time records could not have been accurate because they did not conform with the hours that she would have had to have been at the store given the store's hours of operations. The district court acknowledged that the manager of the Family Dollar store at which Brown worked was terminated on approximately November 24, 2003, and that Brown continued to serve as assistant manager but also took on the managerial duties. Brown testified that she was the only person with the key to open and close the store. The only other persons at the store were two associates who were clerks and stock persons, and only assistant managers or managers had the responsibility of opening and closing stores. She further testified that if she did not come in, the store would not be open for business, and that on one occasion when she injured her finger, she had to return from the emergency room to reopen the store or it would not have been open for business. Brown testified that it took approximately 1-1 ½ hours to open the store, and an additional 1-2 hours to close it. Closing a store involved myriad duties, that could include redoing a display wall, putting up new SKU (stock keeping unit) numbers, and rearranging shelves or end caps. During the holiday period from

Thanksgiving to Christmas, the store had extended hours and closing would take longer. The hours in the employer's records, however, were not reflective of those hours. For instance, in numerous instances, the recorded time would have allowed significantly less than the 1-2 hours that closing the store requires. The store closed at 8:00 p.m. every day but Sunday, when it closed at 6:00 p.m. The following clock-out times were inconsistent with the 1-2 hours of work required to close the store:

Closing time of 6:00 p.m.—clock-out time:

10-19-03  6:30


Closing time of 8:00 p.m., clock-out time:

10-20-03  8:18
11-7-03    8:34
11-15-03  8:30
11-20-03  8:27
11-25-03  8:29
12-27-03  8:06
01-08-04  8:21


More tellingly, the clock-out times for the dates during the holiday hours between Thanksgiving and Christmas had Brown clocking out at times before the store would have even closed:


Closing time of 9:00—clock-out time:

11-28-03  8:18
11-29-03  8:11
12-6-03 8:37
12-13-03  8:10

Closing time 7:00—clock-out time:

11-30-03  6:21


Closing time 10:00—clock-out time:

12-17-03  8:11


The failure of the employer's time records to conform with the hours that Brown would have had to have been in the store further casts doubt on the accuracy and adequacy of the employer's records under the FLSA, and therefore the *Anderson* just and reasonable inference standard is appropriate.

The *Anderson* test addresses whether there is a reasonable basis to calculate damages, and assumes that a violation of the FLSA had been shown. The damages issue is the one before the court at this time, but we should note that the evidence cited above regarding the holiday hours, Brown's responsibilities, and the failure to pay her for those hours raises a genuine issue of fact as to whether she was not properly paid overtime in violation of the FLSA. Therefore, the remaining question is whether that *Anderson* standard is met.

The holiday hours, as well as her testimony regarding the time it took to open and close the store, provide a basis for arriving at a just and reasonable inference as to the uncompensated hours. As noted above, there is evidence in the record that she was the only person able to open and close the store, and that she spent at least 1-2 hours before and after those store hours preparing the store for business. Comparison of the hours for which she was paid with the hours of operation for the store,

would yield a basis for determining the amount and extent of work as a matter of just and reasonable inference. Accordingly, the district court erred in requiring Brown to provide definite and certain evidence of her damages, and the evidence establishes a genuine issue of fact concerning damages under the proper standard.

In fact, the evidence presented here is similar to evidence recently considered sufficient by the Eleventh Circuit in *Allen v. Board of Public Educ. for Bibb Cty.*, 495 F.3d 1306 (11th Cir. 2007). In *Allen*, a group of persons who were bus drivers, bus monitors, paraprofessionals, secretaries and custodians sued the county board of public education (the "Board") alleging that they were owed unpaid overtime compensation under the FLSA. *Id.* at 1309. In determining the proper standard to apply, the *Allen* court held that deposition testimony called into question the trustworthiness of the Board's records, and therefore that the just and reasonable inference standard was appropriate. Specifically, the court noted that some employees testified that they were told not to record their overtime because the Board would not pay it, that some who recorded overtime were told to resubmit time sheets without the overtime, and that some time sheets were otherwise rejected or altered if overtime was noted. *Id.* at 1316. The court concluded that those facts, if true, indicated that the time records of the Board could not be trusted, and that the just and reasonable inference standard was appropriate.

Those facts are similar to those presented by Brown, in her allegations that overtime hours that were submitted on time sheets were not paid, that she was informed that the overtime would not be compensated, and in the evidence that the managers had access to the time records in the computer system and altered them to the em-

ployee's detriment. As with the evidence in *Allen*, that evidence casts doubt on the trustworthiness of the employer's time records, and invokes the just and reasonable inference standard.

Similarly, the type of evidence deemed sufficient to raise that inference in *Allen* is comparable to that in the present case. In *Allen*, the court recognized that hours worked could be proven indirectly, through other "triggering factors" that would have signaled extended work hours. For instance, one employee who could not produce any documentation of her overtime work, could point to triggering factors such as occasional after-school ice cream sales and dances that would help her recall dates in which she worked overtime. Similarly, she noted that on the dates of PTO (Parent-Teacher Organization) meetings, she would be at school from the time school ended until after the meeting around 7:30 or 8:00. The court noted that she could obtain the date of those meetings, and therefore provide a basis for inferring the extra hours worked. *Id.* at 1317. That is similar to the evidence presented by Brown that she opened and closed the store, that she worked for 1-2 hours before opening and after store closing, and that the store was open for extended holiday hours from Thanksgiving to Christmas. Those dates are readily ascertainable, and a comparison of time records with those hours would allow an approximation as to the hours omitted from the time records and the unpaid compensation.

In response to this evidence, Family Dollars argues that we should not consider her testimony that the store had extended hours during that holiday season. Although that would seem to be readily obtainable information, Family Dollar has not proffered any evidence rebutting that claim. Instead, Family Dollar seizes upon her state-

ments during a deposition, and argues that her later interrogatory responses cannot be considered as they conflict with the deposition testimony. We have recognized that a person cannot manufacture a genuine issue of fact by submitting an affidavit that contradicts prior deposition testimony. *Velez v. City of Chicago*, 442 F.3d 1043, 1049 (7th Cir. 2006). There is, however, no such outright conflict here.

Brown was asked in her deposition whether store hours changed seasonally, and she stated that the store would close early on Christmas Eve or New Year's Eve. The issue was then explored further:

Q:  How about, like, black Friday, the Friday after Thanksgiving, would you open early and stay late?

A:  I don't know anything about that holiday?

Q:  Well, it's not a holiday. It's the day after Thanksgiving. It's the busiest shopping time of the year. Did the store have different hours of business—

A:  Not that I recall.

Q:  —between Thanksgiving and Christmas?

A:  That I recall, we closed early on Christmas Eve or Thanksgiving Eve or New Year's Eve.

That does not present the type of contradictory testimony that would require us to ignore her subsequent statements via affidavit as to the extended holiday hours. First, the questioning was somewhat misleading, in that she was first questioned regarding a specific day, Black Friday, and as she was answering that, was asked about hours between Thanksgiving and Christmas. It appears

from her answer that she was focusing on the hours for the actual holidays, not for the period of time in between the holidays. *See id.* (noting that even a contradictory affidavit may be considered if the deposition question was phrased in a confusing manner). In any case, she never stated that there were no holiday hours between Thanksgiving and Christmas. Family Dollar could of course argue that her acknowledgment of holiday hours for Thanksgiving Eve and Christmas Eve implies that there were no other holiday hours, but that is an implication, not a contradiction.

The decision of the district court granting summary judgment is reversed, and the matter remanded for further proceedings consistent with this opinion. The Appellant's Motion to Strike portions of appellee's brief is denied.