In the

# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 22-1743, 22-1744, 22-1745, 22-1746, 22-1747, 22-1748, 22-1749, 22-1750, 22-1751, 22-1752, 22-1753, 22-1754, 22-1755, 22-1756, 22-1757, & 22-1758

RICHARD MAZUREK, et al.,

*Plaintiffs-Appellees*,

*v.*

METALCRAFT OF MAYVILLE, INC.,

*Defendant-Appellant*.

_____

Appeals from the United States District Court for the
Eastern District of Wisconsin.
Nos. 17-cv-1439, 20-cv-0435, 20-cv-0436, 20-cv-0438, 20-cv-0439,
20-cv-0440, 20-cv-0441, 20-cv-0443, 20-cv-0447, 20-cv-0448, 20-cv-0449,
20-cv-0451, 20-cv-0452, 20-cv-0454, 20-cv-0455, 20-cv-0490 —
**Brett H. Ludwig**, *Judge*.

_____

ARGUED OCTOBER 28, 2022 — DECIDED AUGUST 2, 2024

_____

Before SCUDDER, KIRSCH, and JACKSON-AKIWUMI, *Circuit Judges*.

JACKSON-AKIWUMI, *Circuit Judge*. A group of employees sued their employer, Metalcraft of Mayville, for failing to pay them for time spent working just before or after their shifts.

The workers suffered a major blow at summary judgment; the district court ruled their lawsuits were based on vague recollections and fragmentary evidence. Metalcraft, perhaps emboldened by the district court's strong language in granting it summary judgment, then pushed for sanctions against plaintiffs' counsel, characterizing the lawsuits as frivolous from the start. The district court disagreed, ruling that sanctions would be "overkill." Metalcraft brought this appeal in response, but in doing so has made unwarranted claims about the frivolity of the suits and cast unfair aspersions on the honesty of opposing counsel. Because there was just enough factual and legal support for the plaintiffs' claims and because the behavior of plaintiffs' counsel does not fit Metalcraft's expansive allegations, we uphold the denial of sanctions.

# I

Richard Mazurek, a machinist at Metalcraft's West Bend, Wisconsin, plant, filed a Fair Labor Standards Act (FLSA) collective action in October 2017. The suit, pressed on behalf of himself and a class of hourly employees at his plant and the company's Mayville, Wisconsin, plant, alleged the workers were denied overtime pay. Metalcraft's timekeeping system allowed employees to punch in up to 15 minutes before their scheduled start times and punch out up to 15 minutes after their scheduled end times. When employees clocked in early but did not perform compensable work, the clock-in time was adjusted to the regular start time for the employee, as opposed to when they punched the clock. The employees alleged that these adjustments to the on-paper start time happened despite working during these 15-minute periods.

The collective action was decertified in April 2020. Afterwards, the workers filed 24 additional cases which the district

court consolidated. Nine cases were subsequently dismissed for various reasons, the most common being communication issues between client and counsel. Of the remaining cases, the district court asked the parties to select two cases each for summary judgment briefing.

The district court granted summary judgment to Metalcraft in all four of the selected cases. *Mazurek v. Metalcraft of Mayville Inc.*, No. 17-CV-1439-BHL, 2021 WL 5964541, at *6 (E.D. Wis. Dec. 16, 2021) (*Metalcraft I*). In doing so, it held that although FLSA plaintiffs have a lower burden of proof when an employer's record keeping practices do not provide accurate time, employees still must provide some level of proof as to the hours they worked and were not compensated for, through methods like reconstructed memory or inference. *Id.* at *4–5. The district court noted that this standard was designed to be lenient, but it was not an invitation to "guess or invent working hours post hoc." *Id.* at *5. All four plaintiffs, the district court explained, acknowledged their reconstructed worktime was guesswork and ruled out the existence of events or distinctive elements of the workday that would jog their memories about how much work they did during the disputed period. *Id.* at *7.

In a separate order issued the same day, the district court explained, "[g]iven that Plaintiff's counsel had the ability to pick two of the cases presented at summary judgment, and those cases shared the same fatal defect as those selected by Defendant's counsel, it appears that all pending cases may share the same fate." "[T]o avoid unnecessary and wasteful motion practice in the remaining cases," the district court ordered plaintiffs' counsel to file a statement in each of the remaining 12 cases, "identifying any particular facts or legal

arguments that might warrant a different outcome." If differences existed for a particular case, the district court would schedule further proceedings for that case. If not, the court would enter summary judgment for Metalcraft.

In response, the 12 remaining plaintiffs voluntarily dismissed their cases with prejudice, stating that the district court's summary judgment order as to the four other plaintiffs was "likely determinative" of their claims.

Metalcraft then moved for sanctions in all 16 cases. In each brief supporting the motion in the 12 remaining cases, Metalcraft stated: "Our Motion for Sanctions for these twelve cases are similar. Only the transcripts of the twelve are different and those [two] cases having a statute of limitations issue." The word "transcripts" refers to the 12 remaining plaintiffs' deposition transcripts, excerpts of which Metalcraft had dropped into the part of its motion discussing each plaintiff's guesswork and speculation. As for the four cases resolved on summary judgment, Metalcraft filed an identical sanctions motion in each.

In moving for sanctions, Metalcraft argued that the 16 cases shared not only similar facts and law, but also the same root cause of a Rule 11 violation: "no evidence, just speculation." According to Metalcraft, Mazurek's deposition served as the "cornerstone" illustrating the frivolity of the 16 cases because he admitted he had no proof of a FLSA violation. Metalcraft urged the district court to sanction the plaintiffs because "a rudimentary inquiry of all sixteen plaintiffs based on Mazurek's deposition during a pre-filing investigation would have made clear all sixteen cases did not have any facts."

The district court disagreed, pointing to precedent allowing unreported work time to be reconstructed using methods of proof below the standard in most commercial litigation. *Mazurek v. Metalcraft of Mayville Inc.*, No. 17-CV-1439-BHL, 2022 WL 1028928, at *2 (E.D. Wis. Apr. 6, 2022) (*Metalcraft II*). The problem that undermined the suits, the court continued, was a matter of "degree, not kind." *Id.* The fact that the evidence was not enough to win on summary judgment, the court noted, did not retroactively make the cases frivolous enough to merit sanctions, which would be "overkill." *Id.* at *3. In its sanctions decision, the district court made clear that it was evaluating the evidence of the suits as a unit, and—like Metalcraft—it did not make meaningful distinctions between the quality of proof provided in each suit. Metalcraft now appeals the denial of sanctions.

## II

Federal Rule of Civil Procedure 11(b) requires attorneys presenting a pleading or other paper to the court to certify, among other requirements: (1) the pleading or other paper is not being provided to unnecessarily delay or needlessly increase the cost of litigation; (2) the claims are supported by existing law or a nonfrivolous argument for modifying the law; and (3) the factual contentions have evidentiary support. FED. R. CIV. P. 11(b). Rule 11 sanctions—monetary or other penalties assessed against attorneys who violate these requirements—are designed to deter baseless filings, like those presented for an improper purpose. *Pac. Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 118 (7th Cir. 1994). But because sanctions can harm the reputation of attorneys and chill the creativity of counsel, care must be taken in their issuance. *Id.*

(citing *Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928, 936 (7th Cir. 1989) (en banc)).

We review a district court's decision to impose Rule 11 sanctions for abuse of discretion. *Cooney v. Casady*, 735 F.3d 514, 518 (7th Cir. 2013). When evaluating the appropriateness of sanctions, we consider the objective reasonableness of the filing under the circumstances of the case. *Pac. Dunlop Holdings*, 22 F.3d at 118*.* The focus of the rule is conduct and not result; losing a legal challenge or motion, by itself, is not a reason for sanctions. *Id.* at 119.

Metalcraft makes two primary arguments for the necessity of sanctions: (1) there was no factual support for the employees' claims, and (2) established FLSA doctrines, namely the Portal-to-Portal Act and the de minimis doctrine, foreclosed the employees' claims as a matter of law. Neither of these arguments finds support in the record.

## A

Metalcraft argues there was no factual substance to the FLSA claims brought against it by Mazurek, his coworkers, and their attorneys. Metalcraft points to a deposition three months before the initial collective action was filed, during which Mazurek stated that he had memories, but not written records, of the times he worked before the start of his shift. Based on this statement, Metalcraft claims Mazurek "doomed" his initial lawsuit and the 15 other lawsuits that followed. Metalcraft made similar attacks on the proof provided by the other plaintiffs, and even accused plaintiffs' counsel of suborning perjury by submitting evidence Metalcraft considered contradictory.

But in asserting that Mazurek "doomed" his lawsuit from the beginning and in alleging other instances of opposing counsel chicanery, Metalcraft forgets that FLSA claims *can* be made through reconstructed memories of the claimants. When an employer does not keep accurate records of time worked, employees have a lower burden for proving FLSA damages. *Brown v. Fam. Dollar Stores of Ind., LP*, 534 F.3d 593, 595 (7th Cir. 2008) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946)). In those cases, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* To show hours worked by "just and reasonable inference," an employee's time can be reconstructed from memory, inferred from the particulars of the claimant's jobs, or estimated through other methods. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 775 (7th Cir. 2013). If that standard is met, the employer then has the burden of showing either (1) evidence of the exact amount of work performed, or (2) evidence negating the inference drawn from the employee's evidence. *Brown*, 534 F.3d at 595.

The district court held that Metalcraft's timekeeping system, through its use of the 15 minute "grace period" and the practice of rounding time up or down, "do[es] not provide an accurate representation of the time employees spent performing compensable work." *Metalcraft I*, 2021 WL 5964541, at *4. Consequently, as the district court found, the lowered burden for FLSA claimants came into play, and the invocation of memory did not render the suit unfit for filing. Indeed, given this lower standard of proof, Metalcraft's allegations of perjury are unreasonable.

The district court's finding that the suits were not unfit for filing applied not only to Mazurek but also to the other plaintiffs. In its order denying sanctions, the district court stated that the plaintiffs marshalled a "handful of facts that might support a FLSA action." The dissenting opinion reads this statement as pertaining to Mazurek's case only, or to the four summary judgment cases only, not also to the 12 other cases for which Metalcraft sought sanctions. True enough, the district court specifically quoted the summary judgment order's discussion of Mazurek's claim. But in so quoting, the district court stated, "*Plaintiffs* presented the Court with 'a handful of facts that might support a FLSA action[.]'" This indicates the district court was speaking not only about Mazurek when making the "handful of facts" comment, but also about the collective of suits. We do not have reason to question the district court's decision on how to quote its prior decision.

More importantly though, that is not all the district court said about the factual support underpinning each of the 16 cases:

> The decisive issue in these cases was whether Plaintiffs could prove their allegedly uncompensated worktime as a matter of "just and reasonable inference." … As the Court noted in its summary judgment order, Plaintiffs presented the Court with "a handful of facts that might support a FLSA action[.]" *Mazurek*, 2021 WL 5964541, at *7. The problem was one of degree, not kind—the methods Plaintiffs used to estimate worktime were simply too unreliable to permit a factfinder to draw a "just and reasonable inference." *Id*. But a case is not frivolous, nor

> is a factual presentation baseless just because it crumbles at summary judgment. *See Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 886–87 (7th Cir. 1992). Plaintiffs came forward with the kind of evidence that courts hearing FLSA actions have come to expect; they just failed to come forward with enough of this type of evidence. This failure was not sanctionable.

*Metalcraft II*, 2022 WL 1028928, at *2. No portion of this reasoning suggests that it applies to Mazurek only, as opposed to all the plaintiffs.[1]

The dissenting opinion insists that, in addition to determining whether sanctions were warranted in some, all, or none of the cases, the district court should have addressed each of the 16 motions separately. Nothing prohibits this approach, but we know of nothing compelling the approach

---

[1] The dissenting opinion contends that Mazurek's testimony tells us nothing about the factual basis for the 15 other cases, and it is not clear whether there is support for equating Mazurek's FLSA claim with the other plaintiffs' claims. The district court, however, did not hinge its decision as to the 15 other cases on Mazurek's testimony. Plus, Metalcraft took the opposite position, stating throughout its motions that the "pattern" of "unreliable speculation and guesswork" that was "*known [after] and exemplified [by] Mazurek's testimony …* continued for all sixteen of the individual plaintiffs" and "a rudimentary inquiry of all sixteen plaintiffs *based on Mazurek's deposition* during a pre-filing investigation would have made clear all sixteen cases did not have any facts." Metalcraft theorized that Mazurek's testimony clued the other plaintiffs in on the guesswork and speculation in their individual cases. Ultimately, Metalcraft concluded—and the district court agreed—that *Mazurek* and the 15 other cases "shared a fundamental flaw": no admissible evidence. Where Metalcraft and the district court diverged was on the question whether that shared flaw made the filing of the 16 cases frivolous and, therefore, sanctionable.

either. Nor does the dissenting opinion identify any such authority. And Metalcraft did not ask the district court or our court to parcel out the suits. Rather, Metalcraft alleged the workers as a collective did not have sufficient evidence for their claims, and Metalcraft supported this position by emphasizing the similarity of the 16 cases. This presentation by Metalcraft—focusing on the near identical nature of the cases rather than the component cases, and at times concentrating on the primary named plaintiff (Mazurek)—persisted despite the decertification of the actual collective action and the filing of individual suits. With this, the district court decided the 16 motions in a single order, concluding that none of the cases warranted sanctions. Under these circumstances, we are mindful of the discretion afforded district courts in making sanctions decisions given their firsthand knowledge of the proceedings. We are also mindful the district court's explanation must suffice to allow us to meaningfully review the denial of sanctions. *Tobey v. Chibucos*, 890 F.3d 634, 655 (7th Cir. 2018). We are convinced that the district court's order clears this hurdle.[2]

We uphold any exercise of a district court's discretion that could be considered reasonable, even if we might have resolved the question differently. So, we uphold the decision below; the district court did not abuse its discretion in denying sanctions based on the plaintiffs' alleged speculation and guesswork.

---

[2] The district court did not address whether the statute of limitations defense asserted in two cases rendered those plaintiffs' claims frivolous. But Metalcraft did not raise this issue on appeal, so it has been waived. *Lisle v. Welborn*, 933 F.3d 705, 722 n.4 (7th Cir. 2019).

**B**

We turn to Metalcraft's second argument about why sanctions are necessary: Metalcraft believes two authorities, the Portal-to-Portal Act of 1947 and the de minimis doctrine, foreclosed the plaintiffs' FLSA claims as a matter of law. But Metalcraft's argument ignores nuances in the doctrines that made the employees' claims legally viable and sufficient to avoid Rule 11 sanctions.

The Portal-to-Portal Act of 1947 designates the following activities as not compensable under the FLSA: "(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform," and (2) "activities which are preliminary to or postliminary" to the employee's principal activities. 29 U.S.C. § 254(a). Metalcraft contends the pre-shift activities the plaintiffs described were "merely preliminary and two steps removed from their principal activities," and therefore barred under the statutory language.

However, the workers argued from the outset that the Portal-to-Portal Act had no bearing on the calculation of hours within the workday based on a Department of Labor regulation stating that the provision does not apply to time between the "first principal activity on a particular workday and before [the employee] ceases the performance of the last principal activity." 29 C.F.R. § 790.6(a). The plaintiffs also pointed to *IBP, Inc. v. Alvarez*, which held that the time meatpacking plant employees spent walking from their locker rooms to the production area after putting on safety gear was not barred from compensation under the Portal-to-Portal Act. 546 U.S. 21, 30–31, 37 (2005).

Metalcraft counters by citing our decision in *Chagoya v. City of Chicago* as evidence the Portal-to-Portal Act decisively foreclosed the workers' claims. 992 F.3d 607 (7th Cir. 2021). There, we held members of a Chicago Police SWAT team could not seek compensation under the FLSA for time spent transporting, loading, and unloading their weapons and other gear from department-provided vehicles and securing it in their homes. *Id.* at 622. We ruled the FLSA did not cover this time because those requirements were weapons security directives removed from "the operators' principal activity of handling critical incidents." *Id.* at 623. Metalcraft did not mention this case until its reply brief for summary judgment, depriving the plaintiffs of the chance to respond, but that matters little anyway: Mazurek had already addressed in his summary judgment motion the argument that pre-shift activities were "integral and indispensable" to his workday as a machine operator. He rebutted, in advance, the very point for which Metalcraft belatedly cited *Chagova*.

Metalcraft likewise insists the de minimis doctrine barred the workers' claims. The de minimis exception renders activities that take "insubstantial and insignificant periods of time" not compensable under the FLSA. *Frank v. Wilson & Co.*, 172 F.2d 712, 716 (7th Cir. 1949) (quoting *Anderson*, 328 U.S. at 693 (1946)). To evaluate these claims, courts "typically consider the amount of time spent on the extra work, the practical administrative difficulties of recording additional time, the regularity with which the additional work is performed, and the aggregate amount of compensable time." *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 176 (7th Cir. 2011). The employer bears the burden of showing the doctrine is applicable to a particular FLSA claim. *Id.* Even though Metalcraft argues the doctrine foreclosed the employees' claims, it is far from the

absolute bar Metalcraft suggests. Mazurek and the other plaintiffs carefully outlined reasons why their claim was not de minimis under the *Kellar* factors.

In sum, the plaintiffs extensively briefed both the de minimis issue and the Portal-to-Portal Act at the summary judgment stage**.** A party making a legal argument that turns out to be barred by Supreme Court or Seventh Circuit precedent is not per se sanctionable; an attempt to distinguish one's case from the precedent that purportedly forecloses the claim is enough. *Brunt v. Serv. Emps. Int'l Union*, 284 F.3d 715, 721 (7th Cir. 2002). The plaintiffs' legal arguments on both issues fall well short of the "baseless" threshold that merits Rule 11 sanctions. *See, e.g.*, *Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 957 (7th Cir. 2020) (upholding sanctions against a party that took a position "disregarding what anyone having taken a first-year contracts class could identify as the pivotal legal issues").

In its attempt to persuade us that the employees' claims were never legally viable given the Portal-to-Portal Act and the de minimis doctrine, Metalcraft points to the district court's brief statement at summary judgment that the plaintiffs "have not established" the work they performed was compensable under either doctrine. *Metalcraft I*, 2021 WL 5964541, at *7 n.4. However, this statement, wedged into a footnote, was eclipsed by the court's overwhelming focus on the deficiencies of the employees' proof of time worked. *Id.* It is not difficult to imagine, had there been better factual substantiation of the workers' claims, the district court would have looked more closely at the briefing on these FLSA exceptions and come to a different conclusion.

In continuing to press its view about the legal viability of the employees' claims, Metalcraft relies on arguments that

ignore the difference between the standard for summary
judgment and the standard for sanctions. It claims the court's
conclusions at summary judgment necessarily mean sanc-
tions are in order. However, we have urged caution in
"adopting findings and conclusions" from one stage of a liti-
gation to a different stage of the litigation with different legal
standards. *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277,
292 (7th Cir. 1998) (quoting *Commc'ns Maint., Inc. v. Motorola,
Inc.*, 761 F.2d 1202, 1205 (7th Cir. 1985)). This instruction par-
ticularly applies in this case, as the standard for a grant of
summary judgment—when there is no genuine issue of ma-
terial fact, *Sweatt v. Union Pac. R. Co.*, 796 F.3d 701, 707 (7th
Cir. 2015) (citing FED. R. CIV. P. 56(c))—is distinctly different
from that for Rule 11 sanctions. Such sanctions are warranted
when an attorney's pleadings are not well grounded by ap-
propriate factual contentions, "existing law[,] or by a nonfriv-
olous argument" for changing legal precedent. FED. R. CIV. P.
11(b). Here, Mazurek and the other plaintiffs presented plau-
sible legal arguments for the compensability of their working
time, not to mention evidence appropriate in FLSA suits chal-
lenging employers with deficient internal recordkeeping
practices. *See Brunt*, 284 F.3d at 721; *Brown*, 534 F.3d at 595.

### III

Notwithstanding our decision affirming the district court,
we note the court's handling of the case perhaps invited
Metalcraft to mount this challenge. The court used strong lan-
guage throughout its summary judgment decision, slamming
the plaintiffs' suits as "speculative," "internally inconsistent,"
and an attempt to "extract and weaponize" a "morass of con-
tradictory allegations." *Metalcraft I*, 2021 WL 5964541, at *5–7.
The court's choice language risked suggesting to a summary

judgment victor that sanctions were a natural next step when, for the reasons we have explained above, they were not.

Then the court wrote that it was declining to award sanctions in part because doing so "would be overkill." *Metalcraft II*, 2022 WL 1028928, at *3. At the outset of its opinion, the district court cited and discussed Rule 11 at length, before later explaining why the suits were "not frivolous"; why the suits' "factual presentations [were not] baseless"; and why it concluded that the "plaintiffs came forward with the kind of evidence that courts hearing FLSA actions have come to expect … [but] failed to come forward with enough of this type of evidence." *Id.*, at *1–2. This shows the district court did not apply an erroneous legal standard, notwithstanding its word choice later in the opinion.

Metalcraft's arguments in favor of sanctions fail to meet the high standard required to override the discretion of the district court. The plaintiffs' suits were based on legitimate legal arguments, using legitimate methods of proof. That the plaintiffs turned out to have insufficient evidence to support their allegations might have been a sign of poor case strategy, but it is not the kind of bad faith that justifies sanctions. As a result, we AFFIRM the district court.

KIRSCH, *Circuit Judge*, dissenting. I agree with the majority's conclusion that the district court did not abuse its discretion in denying sanctions in Richard Mazurek's lawsuit. But in my view, the district court failed to analyze the factual underpinnings of the other fifteen plaintiffs' suits when denying Metalcraft's motions for sanctions.

Sanctions are appropriate when plaintiffs or their attorneys bring baseless suits not reasonably grounded in law or fact. See Fed. R. Civ. P. 11; *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). The factual contentions underlying claims must "have evidentiary support" or a likelihood thereof "after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). When reviewing a denial of sanctions, we give deference to a district court's familiarity with the proceedings. But that deference is not blind. "Deferential review will not prevent this court from ensuring that district judges reflect seriously, and consider fully, before imposing (or denying) sanctions. Until discretion has been taken seriously in the district court and exercised conscientiously, the basis for deference is missing." *Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928, 936 (7th Cir. 1989).

When deciding whether to impose sanctions under Rule 11, a district court must give careful thought as to whether they are warranted in each individual case. When a sanctions motion contends that a suit lacks any reasonable basis, "the court must undertake an objective inquiry into whether the party or his counsel should have known that his position is groundless." *Cuna Mut. Ins. Soc'y v. Off. & Pro. Emps. Int'l Union, Loc. 39*, 443 F.3d 556, 560 (7th Cir. 2006) (cleaned up). If a party moves for sanctions in multiple lawsuits that were consolidated for litigation, a district court

cannot take shortcuts. Determining whether an attorney's behavior was sanctionable in one case neither blesses nor condemns his actions in another. After all, at its core, a Rule 11 inquiry is a *case-by-case* determination. See *Beverly Gravel, Inc. v. DiDomenico*, 908 F.2d 223, 225 (7th Cir. 1990) ("What constitutes a reasonable pre-filing investigation [under Rule 11] depends on the circumstances of each case."); *Orlett v. Cincinnati Microwave, Inc.*, 954 F.2d 414, 419 n.5 (6th Cir. 1992) ("The district court itself recognized correctly that 'a Rule 11 sanction must be based on a case by case inquiry.'"); *Matter of Yagman*, 796 F.2d 1165, 1182 (9th Cir. 1986) ("Each case must be taken individually and evaluated in light of its own peculiar circumstances."). For this reason, a district court must analyze each case separately and determine whether sanctions are warranted in some, all, or none.

After Metalcraft won at summary judgment, it moved for sanctions in each of the sixteen cases. The district court consolidated the motions and denied them all in a single order without separately addressing Metalcraft's evidentiary arguments as to each motion. The court reasoned that sanctions were not warranted based on its conclusion at summary judgment that the plaintiffs presented "a handful of facts that might support a FLSA action." And it concluded that because the plaintiffs had already lost at summary judgment, "sanctions would be overkill."

The district court committed two errors here that warrant reversal and remand. First, the factual support that the district court identified pertained to only one of the sixteen cases for which Metalcraft sought sanctions. The "handful of facts that might support a FLSA action" referred solely to the summary judgment order's discussion of Mazurek's claim and his

contradictory deposition testimony. But Mazurek's testimony—and any evidence supporting his claim—tells us nothing about the factual basis for the other fifteen cases. The majority contends that, since the district court quoted its summary judgment order by referencing "Plaintiffs" rather than just a single plaintiff, it implicitly considered the evidence available in all sixteen individual cases. But that conclusion contravenes the context of the district court's discussion, which wholly hinged on the evidence it reviewed at summary judgment. Recall that only four representative cases—likely the strongest ones—were tested at summary judgment. At most, then, "Plaintiffs" refers to those four cases, not the twelve others that were voluntarily dismissed (and potentially were even weaker and more sanctionable than the representative cases rejected at summary judgment).

To be sure, there is no evidentiary basis for equating the FLSA claims reviewed at summary judgment with the other plaintiffs' claims. For instance, Mazurek stated that he had memories, but not written records, of the times he worked before the start of his shift. But at least one other plaintiff, Casey Lamberg, testified that he had no memories of working before or after his shifts. The district court denied sanctions without even assessing whether each of the other suits had any factual support. The district court's conclusion that Mazurek's suit (or the three other summary judgment suits) was not sanctionable does not mean that the other plaintiffs' suits can get away with sanctionable conduct, if there was any.

The majority then asserts that Metalcraft did not parcel out the suits before the district court, and that therefore, the district court did not need to address each case individually. That contention mischaracterizes the record. As mentioned,

Metalcraft filed a separate motion for sanctions for each individual case. For a case-by-case inquiry, that should have been enough. Further, while substantial portions of those motions were identical across all cases (which is to be expected in a situation like this), each motion also contained unique evidence and argument as to the named plaintiff. For example, in Jeffrey Anders's case, Metalcraft's motion emphasized the absurdity of the lawsuit within Anders's specific employment context, focusing on his substantial involvement in non-work-related activities and noting that he received overtime pay even when he was not working. The district court should have addressed this motion (and the others) separately.

Second, reading the district court's order, it is unclear whether it applied the correct standard in assessing whether sanctions were warranted. The district court declined to award sanctions in part because doing so "would be overkill." The majority rightly identifies that overkill is not the standard, yet even so, defers to the district court's decision in the other fifteen suits that it failed to analyze. I would not.

"A serious Rule 11 motion is not a gnat to be brushed off with the back of the hand. This motion was serious; it should have received serious attention[.]" *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1084 (7th Cir. 1987). I would vacate and remand to the district court with instructions to reconsider Metalcraft's motion for each individual suit under the appropriate standard.

I respectfully dissent.