In the

# United States Court of Appeals
## For the Seventh Circuit

No. 12-3924

CITIZENS HEALTH CORPORATION,

*Plaintiff-Appellant*,

*v.*

KATHLEEN SEBELIUS, Secretary of
Health and Human Services, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:12-cv-00748-SEB-TAB — **Sarah Evans Barker**, *Judge.*

ARGUED MAY 28, 2013 — DECIDED AUGUST 2, 2013

Before EASTERBROOK, *Chief Judge*, and WILLIAMS and
HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Defendant Health and Hospital
Corporation of Marion County, Indiana ("Health and Hospi-
tal") is a municipal corporation that operates a major hospital
and numerous health care facilities. This appeal arises from one
of those facilities, a federally funded health center that Health
and Hospital operated in partnership with plaintiff Citizens

Health Corporation ("Citizens") to serve the medically underserved population in Indianapolis. The health center was funded in part by a federal grant awarded to Health and Hospital by the federal Health Resources and Services Administration ("HRSA"), which is part of the Department of Health and Human Services. In 2012, after Citizens and Health and Hospital had a falling out, Health and Hospital decided to terminate its partnership with Citizens and relinquish the federal grant, which still had several years of funding remaining.

In response, Citizens filed this suit against Health and Hospital, HRSA, and other defendants in federal district court in an effort to retain the grant funds. The district court granted summary judgment in favor of all defendants, concluding that Citizens had no contractual, statutory, or constitutionally cognizable interest in the grant, and that Health and Hospital and HRSA were free to terminate the grant without Citizens' approval. Citizens appeals this decision, and we affirm.

I.  *Factual and Procedural Background*

  A.  *Section 330 Grants*

Section 330 of the Public Health Services Act makes federal funding available to qualifying health centers that provide primary health care services to medically underserved populations. 42 U.S.C. § 254b. An entity becomes eligible for section 330 grant funds by submitting an application to HRSA. In addition to establishing that the entity provides health care to a medically underserved population area, the entity must satisfy a number of additional requirements. See 42 U.S.C. § 254b(k)(3). Of particular relevance to this case, a qualified

entity must be able to demonstrate its financial responsibility, § 254b(k)(3)(D), and must establish a governing board composed of a majority of individuals who are being served by the health center, § 254b(k)(3)(H). Entities that satisfy these requirements and receive section 330 grant funds are designated federally qualified health centers.

Federally qualified health centers may be public or not-for-profit entities. Since public entities sometimes have difficulty establishing an independent patient-controlled board, HRSA permits public entities to form health centers with a private not-for-profit co-applicant. See Health Resources and Services Administration, Policy Information Notice 1999-09, Implementation of the Balanced Budget Act Amendment of the Definition of Federally Qualified Health Center Look-Alike Entities for Public Entities (1999). Under a co-applicant structure, the public agency partners with a co-applicant to satisfy the statutory requirements. The co-applicant typically provides the patient-controlled board to oversee the provision of health care services while the public agency retains fiscal and general policy-making authority. The entities have flexibility to determine their responsibilities, but HRSA requires that the entities memorialize the agreed allocation of responsibilities in a written contract. *Id.* at 6-7. This contract is known as a co-applicant agreement.

B.  *Citizens and Health and Hospital*

Plaintiff Citizens is an Indiana not-for-profit corporation. Since 1974, Citizens has operated a health center that provides primary health care services to the medically underserved population in Indianapolis. In 1994, Citizens began receiving

section 330 grant funds as a federally qualified health center. In 2001, however, Citizens ran into managerial and financial difficulties. These difficulties threatened Citizens' eligibility for the section 330 grant.

To continue operating the health center with federal funding, Citizens partnered with Health and Hospital, which is again a public entity. Health and Hospital's health centers were all controlled by a central board. This meant that Health and Hospital was not eligible to operate a federally qualified health center on its own because it did not satisfy the section 330 requirement of having the center controlled by a board composed of a majority of health center patients. Health and Hospital and Citizens were therefore natural complements for each other. Citizens was able to provide the necessary patient-controlled governing board and Health and Hospital the financial management responsibility.

As required by HRSA, Health and Hospital and Citizens formalized this relationship in a written co-applicant agreement. Under the terms of the agreement, Citizens was responsible for the general governance of the health center, providing primary care medical services, and achieving several specified performance improvement goals. Health and Hospital was to provide financial management, approve the health center's budget, develop sound management procedures, assist the Citizens' board, and "Receive, manage, and disburse" the section 330 grant funds, for which Health and Hospital had "ultimate fiscal accountability … ." HRSA approved the arrangement and awarded the section 330 grant to Health and Hospital as grantee. The parties later renewed both the grant and the co-applicant agreement.

In February 2011, the fourth of these co-applicant agreements expired. Unlike in the past, Citizens and Health and Hospital did not immediately enter into a new agreement. Health and Hospital maintains that it was reluctant to enter into a new agreement because, among other reservations, it was concerned about Citizens' financial health and stability, and Citizens had failed to provide it with the financial statements necessary to alleviate its concerns. Because HRSA requires the public entity and the co-applicant to operate the center under a co-applicant agreement, HRSA sent both Citizens and Health and Hospital notice that the health center was no longer in compliance with the grant program requirements and would lose eligibility for the grant funds unless they entered into a new co-applicant agreement.

On September 23, 2011, Citizens and Health and Hospital entered into a new co-applicant agreement. Unlike the previous multi-year agreements, though, the new agreement was to be in effect only through February 28, 2012. The agreement provided options for renewal for up to four successive one-year terms, through the end of the current grant period. The new co-applicant agreement, however, imposed no obligation on either party to renew the agreement. The new agreement explicitly provided that the agreement could be renewed only by "written notice sent by either Party and written acceptance by the other."

After Health and Hospital and Citizens signed the new agreement, their relationship did not improve. Health and Hospital remained troubled by Citizens' accounting and management practices, and proposed restructuring the relationship to give Health and Hospital greater control over

the health center staff and the provision of medical services. Citizens was not receptive to the proposed changes. HRSA visited the center during November 2011 and attempted to resolve the disagreements, but the attempt at mediating the dispute proved unsuccessful.

Health and Hospital then concluded that the current arrangement was unsatisfactory. Health and Hospital told Citizens that it would not be renewing the co-applicant agreement and that it would accordingly relinquish the section 330 grant to HRSA when the agreement expired. Health and Hospital also notified HRSA on February 14, 2012 that it intended to relinquish the grant on November 30, 2012. (The lag between expiration of the agreement and termination of the grant was to prevent disruption of medical services.)

Citizens, fearing loss of the grant funds and invoking federal question and supplemental jurisdiction, filed this suit on June 1, 2012 seeking to enjoin the defendants from terminating the section 330 grant.[1] Citizens asserted constitutional and contractual claims. Citizens alleged that HRSA's decision to permit Health and Hospital to relinquish the grant was both contrary to law and a violation of Citizens' procedural due process rights. Citizens also alleged that Health and Hospital's

---

[1]   In addition to Health and Hospital and HRSA, Citizens sued the Department of Health and Human Services and its Secretary. The claims against these defendants are indistinguishable from the claims against HRSA, so for simplicity we refer only to HRSA. Citizens also sued James Minor and Matthew Gutwein, the board chair and executive director, respectively, of Health and Hospital. Citizens has not appealed the grant of summary judgment in favor Minor and Gutwein.

release of the grant breached the co-applicant agreement. The district court granted summary judgment in favor of all defendants, finding that Citizens had no right to the grant under federal law and that the co-applicant agreement did not prevent Health and Hospital from relinquishing the grant after the contract expired. *Citizens Health Corp. v. Sebelius*, No. 1:12-cv-00748, 2012 WL 5985592 (S.D. Ind. Nov. 29, 2012). Citizens appeals. We have jurisdiction under 28 U.S.C. § 1291.

II.  *Analysis*

Summary judgment is appropriate if there are no genuine issues of material fact such that the moving parties are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We review the district court's grant of summary judgment *de novo*, and we give the non-moving party the benefit of reasonable inferences that could be drawn from the record. See *Good v. Univ. of Chicago Med. Ctr.*, 673 F.3d 670, 673 (7th Cir. 2012).

Citizens appeals the grant of summary judgment in favor of both HRSA and Health and Hospital. Citizens contends that the district court erred in determining that Citizens itself was not the section 330 grant recipient. As a result, Citizens maintains, the court incorrectly concluded both that HRSA acted lawfully when it accepted Health and Hospital's request to relinquish the grant and that the Health and Hospital-Citizens co-applicant agreement did not prohibit Health and Hospital from relinquishing the grant after the agreement expired. We find no error.

A.  *Section 330 Grantee*

Before turning to the specific claims, we begin with Citizens' contention that it was the grantee, which is the foundation for all its claims. Citizens' argument confuses its recent position as co-applicant for the health center with its earlier legal status as the section 330 grantee. They are not identical. Recall that a health center with a co-applicant structure must memorialize the division of responsibilities in a written co-applicant agreement. In this case, the co-applicant agreement provided that Health and Hospital was solely responsible for receiving the grant funds. Consistent with the agreement, HRSA treated Health and Hospital as the grantee. The undisputed facts show that Health and Hospital was the sole grantee.

The notice of grant award provides clear evidence that HRSA considered Health and Hospital to be the sole grantee. The grant award contains a box captioned "Grantee Name and Address."  Health and Hospital's is the only name listed in the box. Citizens suggests that we should not take this seriously because Citizens and Health and Hospital agreed that Health and Hospital would have its name on the grant only as a formality to comply with regulations. Citizens points to no evidence of such a side agreement, and the co-applicant agreement between Health and Hospital and Citizens belies the conclusion that this was a meaningless formality. (Even if there had been a side agreement, it would not bind HRSA without its consent.)

We need not consider this possibility further, however, because the co-applicant agreement demonstrates that the

parties understood that Health and Hospital would be in charge of the grant. Section 2.2.4 of the agreement provided that Health and Hospital was to "Receive, manage, and disburse Section 330 grant funds" and "have ultimate fiscal accountability for the Section 330 grant funds." This language does not suggest that Citizens had any authority over the grant. Moreover, the "ultimate fiscal responsibility" language tracks the definition of grantee in the federal regulations. When a grant is made to a local government entity like Health and Hospital, the regulations define the grantee as "the government to which a grant is awarded and which is accountable for the use of the funds provided." 45 C.F.R. § 92.3. The grant award, the co-applicant agreement, and the regulations show beyond dispute that Health and Hospital was the sole grantee.

The conclusion that Citizens was not a grantee does not mean that it was at Health and Hospital's mercy for grant funds. Rather it means Citizens' entitlement to grant funds existed only by contract with Health and Hospital. Section 2.2.4 of the Health and Hospital-Citizens' agreement provided such an entitlement, though it was only a partial one. During the agreement's operation, Health and Hospital was to "ensure that [Citizens] receives Section 330 grant funds for current month costs." For our purposes, though, the critical point is that the agreement lasted for a shorter period than the grant, providing the conditions for this dispute. We turn now to the substance of Citizens' claims against HRSA and Health and Hospital.

B. *Claims against HRSA*

Citizens invokes the Administrative Procedure Act ("APA") to set aside HRSA's decision to terminate the grant on Health and Hospital's request. Citizens argues that the decision was "not in accordance with law .…" See 5 U.S.C. § 706(2)(A). Our review of APA claims is deferential to the agency. We will defer to the judgment of the agency unless its action was "arbitrary, capricious, or not in accordance with the law." *Edgewater Hosp., Inc. v. Bowen*, 857 F.2d 1123, 1129 (7th Cir. 1988). Citizens argues that the agency's decision to accept relinquishment of the grant was unlawful both because it did not comply with the applicable regulations and because it deprived Citizens of property without constitutionally adequate process. Regardless of other obstacles these argument might encounter, both fail for a common reason: Citizens was not the grantee, and HRSA therefore could not have been required to afford it any process under the regulations or the Due Process Clause before terminating the grant. We address first the regulatory claim and then the constitutional claim.

1. *HRSA's Compliance with Applicable Regulations*

Section 330 grants to local governmental entities are governed by 45 C.F.R. part 92. The regulations permit the grantee to relinquish the entire grant by providing the awarding agency with written notice that sets forth the reasons for termination and the effective date of termination. 45 C.F.R. § 92.44(b). There is no requirement that the grantee provide notice to other entities that may be affected by termination or that HRSA consult these entities before terminating the grant.

The regulations therefore empower HRSA to accept the relinquishment of a grant at the grantee's request.

The district court correctly applied 45 C.F.R. part 92 to HRSA's action and determined that section 92.44 permitted HRSA to accept Health and Hospital's relinquishment of the grant. Because Health and Hospital was the grantee, the regulations allowed HRSA to terminate the grant at Health and Hospital's request after Health and Hospital provided the required notice. § 92.44(b). Health and Hospital provided HRSA with the required notice on February 14, 2012, and HRSA lawfully terminated the grant in response. The district court applied the proper law and rendered the proper result.

Citizens' arguments to avoid this logic all rely on the mistaken theory that Citizens was the grantee. Citizens contends that the district court erred by applying 45 C.F.R. part 92 of the regulations instead of 45 C.F.R. part 74 because the co-applicant agreement referred to part 74. According to Citizens, the mention of part 74 in the co-applicant agreement required HRSA and the district court to apply part 74. The only difference between part 92 and part 74 relevant to this dispute is that part 74 governs grants to private entities while part 92 governs grants to state and local governmental entities. Citizens is not clear about the import of this alleged error; presumably the significance is that if part 74 governed, it would mean that Citizens was the grantee so that HRSA could accept relinquishment of the grant only from Citizens.

This argument, however, is simply a reframing of the argument that Citizens is the grantee, and we have already rejected that argument. Moreover, the co-applicant agreement

did not purport to alter the governing law. Section 7.1 of the agreement provided that the "agreement shall be governed and construed in accordance with applicable federal and state laws, regulations, and policies, including but not limited to … 45 C.F.R. Part 74 … ." This provision simply means that the parties intended the applicable laws to govern. Because Health and Hospital was the grantee, part 92 is the applicable law and the regulations permitted HRSA to terminate the grant at Health and Hospital's request.

2.  *Constitutional Due Process*

Citizens also argues that HRSA's decision to terminate the grant without giving it notice and an opportunity to object violated its constitutional due process rights. To prevail on this claim, Citizens must show that HRSA deprived it of a constitutionally protected liberty or property interest and that the deprivation occurred without constitutionally adequate process. See *Doe v. Heck*, 327 F.3d 492, 526 (7th Cir. 2003). The threshold question in any due process challenge is whether a protected property or liberty interest actually exists. See *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999); *Cole v. Milwaukee Area Technical Coll. Dist.*, 634 F.3d 901, 904 (7th Cir. 2011). To have a protectable property interest in a benefit such as a grant, a person "must have more than a unilateral expectation of [the claimed interest]. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). A legitimate claim of entitlement may arise from a contract, a statute, or a regulation, provided the source of the claim is specific enough to require the provision of the benefit on a

nondiscretionary basis. *Khan v. Bland*, 630 F.3d 519, 528-29 (7th Cir. 2010). Citizens' procedural due process claim fails at this first step. Citizens has failed to offer any evidence indicating that it had a legitimate claim of entitlement to the grant or that it was deprived of a protected liberty interest.[2]

Citizens first contends that federal law provides it with a claim of entitlement to the grant as grantee. We have already rejected this argument because only Health and Hospital, as sole grantee, had an arguable entitlement to the grant funds from HRSA. There was therefore no basis for Citizens to conclude that federal law provided it with a legitimate claim of entitlement to the grant.

Next, Citizens attempts to locate a property interest in Indiana employment law. The argument appears to be that the grant created an employment arrangement in which Citizens had an expectation of employment throughout the grant term, and that this expectation is considered a property interest under Indiana law. Apart from other potential problems with this argument—the contractual relationship between Citizens and Health and Hospital would not be "employment" under Indiana law—the argument fails because Citizens has not identified any statute, regulation, or portion of the grant that gave it a continued expectation of employment or any other contractual relationship arising out of the grant funds. The closest thing Citizens can point to is the co-applicant agree-

---

[2] Citizens failed to argue this point in the district court. See *Citizens Health Corp. v. Sebelius*, 2012 WL 5985592, at *8. It is unclear, however, whether the district court based its decision on waiver, so we review Citizens' arguments on this point for the sake of completeness.

ment. But any entitlement that arose from this agreement would be provided by Health and Hospital *under the agreement*, not by HRSA under the grant. Citizens has not alleged and could not allege that HRSA was bound by the contract, which had expired in any event. Citizens was not the grantee, and the applicable regulations do not provide a co-applicant with any entitlement to the grant funds. Citizens therefore did not have an ascertainable term of employment with the federal government or with Health and Hospital pursuant to the grant.

Third, Citizens argues that it has a protected liberty interest in its reputation and that the termination of the grant harmed its reputation. Assuming that Citizens will in fact suffer reputational harm, not all harms to reputation violate constitutionally protected interests. In *Paul v. Davis*, 424 U.S. 693, 711-12 (1976), the Supreme Court held that state action that stigmatizes a person's reputation is not a deprivation under the Due Process Clause unless the deprivation alters a previously afforded right or status. Such status need not be supported by an affirmative law, such as the freedom a person over twenty-one enjoys to purchase liquor in a liquor store, see *Wisconsin v. Constantineau*, 400 U.S. 433 (1971) (finding deprivation of liberty interest when effect of government action was to prohibit person from purchasing liquor), but the right or status "must take concrete forms and extend beyond mere reputational interests … ." *Omosegbon v. Wells*, 335 F.3d 668, 675 (7th Cir. 2003). Once again, because Citizens was not the grantee, HRSA's acceptance of the relinquishment of the grant did not deprive Citizens of a legal right or status, a necessary prerequisite to a finding of a reputational injury that might violate the federal Constitution.

Citizens finds no support for its position in *Southern Mutual Help Ass'n, Inc. v. Califano*, 574 F.2d 518, 524 (D.C. Cir. 1977), where the D.C. Circuit held that agency regulations required the agency to provide a grant recipient a hearing before terminating a grant under a similar Public Health Service Act program. In so deciding, the court did not reach the question of whether the reputational harm from the termination of a grant constituted a liberty interest protected by the Due Process Clause. The court simply decided that such harm was sufficient to convey standing under the APA, a different question and one that does not speak to the issue in this case. *Southern Mutual Help* differs from this case in two other important respects. First, unlike Citizens, the organization in *Southern Mutual Help* was itself a current grantee. Second, the grant was terminated based on accusations that the organization was "violating departmental regulations, misusing grant funds, and engaging in activities that create conflicts of interest." *Id.* Neither of these conditions is present here. Citizens was not the grantee, and there was no determination by HRSA of any wrongdoing on the part of Citizens that might have implicated the sort of reputational interests at issue in *Southern Mutual Help*.

C. *Claims Against Health and Hospital*

We now turn to Citizens' breach of contract claim against Health and Hospital. Citizens argues that the district court erred in granting summary judgment by overlooking disputed issues of material fact. We find the plain text of the co-applicant agreement unambiguously permitted Health and Hospital to relinquish the grant when the contract expired. The district

court therefore did not err by granting summary judgment in favor of Health and Hospital.

The co-applicant agreement makes clear that Health and Hospital was the party responsible for administering the section 330 grant. The provisions of the agreement that relate to the grant provided that Health and Hospital was to "Receive, manage, and disburse" the grant funds. And Health and Hospital was obligated to "ensure that [Citizens] receives Section 330 grant funds for current month costs." In sum, the agreement provided that Health and Hospital was responsible for securing and disbursing the grant funds to Citizens every month. The agreement did not obligate Health and Hospital to disburse funds over the entire course of the grant. The contractual obligation lasted for only the duration of the contract. When the contract expired, so did Health and Hospital's obligation.

The contract also imposed no obligation on either party to renew (or attempt to renew) the contract when it expired. The terms on the duration of the agreement are clear. Section 19.1.1 provided that the "Agreement shall be in effect March 1, 2011 – February 28, 2012." And section 19.1.2 provided that the agreement *may* be renewed, but renewal would have required a written offer by one party and a written acceptance by the other. No provision in the contract required the parties to renew the agreement or even to hold discussions before declining to renew. If the agreement was not renewed, section 19.2.1 provided that the agreement "shall terminate immediately … ." When the agreement terminated, so did the parties' obligations, including Health and Hospital's obligation to disburse the grant funds to Citizens. Thus the contract did not

prohibit Health and Hospital from declining to renew the contract or from relinquishing the grant when the agreement expired on February 28, 2012. The undisputed facts thus show that Health and Hospital did not breach the contract when it relinquished the grant.

Citizens also suggests that Health and Hospital breached the contract by failing to mediate the dispute that led it to decline to renew the contract and relinquish the grant. Article 8 of the contract provided that in the event of a dispute, "the Parties shall attempt formal mediation, if they mutually agree to do so." Citizens suggests that once the parties began mediation with HRSA, there was an obligation to complete it before Health and Hospital could terminate the grant. Quite apart from other problems with this argument, the issue became moot when the contract expired. Citizens does not contend that the alleged failure to mediate caused it injury beyond the termination of the grant, something that we have already concluded Health and Hospital was within its rights to do. Once the agreement expired, Health and Hospital was free to relinquish the grant regardless of any arguable duty to mediate. The contract did not create a duty to mediate before declining to renew the agreement; Health and Hospital simply exercised its right not to renew the contract.

Because the relevant language of the contract is clear, no disputed issues of material fact precluded summary judgment in favor of Health and Hospital. Though Citizens makes a rather barebones assertion that certain affidavits in the record reveal conflicting accounts of the parties' expectations about the grant, the relevant terms of the contract are so clear that we need not wade into such extrinsic evidence indicating the

parties' understandings of the agreement. See *Louis & Karen Metro Family, LLC v. Lawrenceburg Conservancy Dist.*, 616 F.3d 618, 622 (7th Cir. 2010) (applying Indiana law; extrinsic evidence not admissible when contract is unambiguous). For this same reason, there was no reason for the district court to grant Citizens leave to take additional depositions.

The judgment of the district court is AFFIRMED.