In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 10-3842 & 11-1757

DEBORAH O. COONEY,

*Plaintiff-Appellant,*

*Cross-Appellee,*

*v.*

RHONDA CASADY, et al.,

*Defendants-Appellees,*

*Cross-Appellants.*

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:09-cv-01920 — **Elaine E. Bucklo**, *Judge.*

ARGUED SEPTEMBER 18, 2012 — DECIDED AUGUST 19, 2013

Before FLAUM, SYKES, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* This case arises out of Deborah O.
Cooney's administrative appeal of the Illinois Department of
Children and Family Services' (DCFS) indicated finding
against her of mental injury and substantial risk of harm to her
children. Cooney claims that Rhonda Casady and Andrew

Sosnowski, counsel for DCFS in that administrative appeal, conspired with Lesley Magnabosco who was hired by DCFS to transcribe the administrative appeal hearing to deprive Cooney of her due process rights by altering the transcripts of those proceedings. Cooney appeals the district court's grant of summary judgment to the defendants, and the defendants appeal the denial of their petition for attorneys' fees and costs under 42 U.S.C. § 1988 and Federal Rule of Civil Procedure 11. They also seek an award of their costs and attorneys' fees under Federal Rule of Appellate Procedure 38. We affirm the district court's judgments and order Cooney to show cause why an award under Rule 38 should not be entered against her.

## I.    BACKGROUND

Cooney divorced her husband and obtained sole custody of their two minor sons. A few years later, the ex-husband petitioned for change of custody in Illinois state court. A court-appointed expert diagnosed Cooney as having "Munchausen [Syndrome] by Proxy," "in which 'an individual produces or feigns physical or emotional symptoms in another person under his or her care. Usually the victim is a young child, and the person producing the symptoms may be the child's parent or caretaker, most often the mother.'" *Cooney v. Rossiter*, 583 F.3d 967, 969 (7th Cir. 2009) (citations omitted), *cert. denied*, 130 S. Ct. 3322 (2010). A therapist hired by the ex-husband for the children reported to DCFS that Cooney was abusing the children; as a result, DCFS commenced an administrative

proceeding against Cooney. After an investigation, DCFS entered an indicated finding of mental injury against her.[1]

Cooney filed an administrative appeal of the indicated finding. Casady and Sosnowski represented DCFS in the appeal, which was heard by Administrative Law Judge Daniel Baechle. The ALJ recorded the proceedings on microcassettes (and he was the only one who operated the recorder, changed the tapes, and maintained the tapes). Cooney, however, retained a private court-reporting company to transcribe the hearing as it occurred, creating the "Fishman transcripts." DCFS denied Cooney's appeal based on the ALJ's findings and recommendations, and Cooney filed a complaint for administrative review in the state circuit court.

Once the petition for administrative review was filed, Magnabosco began transcribing the administrative-appeal recordings. The parties agree that Magnabosco was *not* a certified shorthand reporter. *Cf. Cooney v. Magnabosco*, 943 N.E.2d 290, 296 (Ill. App. Ct. 2011) (rejecting Cooney's contention "that anyone who uses shorthand to report a proceeding in this state is automatically practicing as a 'certified shorthand reporter' or holding herself out as such"), *appeal denied*. Magnabosco was an independent contractor for Benedia Certified Court Reporting, which had a contract with DCFS to

---

1  "[U]pon receipt of a report of abuse … DCFS must determine whether the report is 'indicated,' 'unfounded,' or 'undetermined.'" *Cooney v. Casady*, 652 F. Supp. 2d 948, 950 n.1 (N.D. Ill. 2009) (quoting 325 ILCS 5/7.12). A person "subject to an indicated finding has the right to a hearing to appeal the finding and to request expungement of … her name from the State Central Register." *Id.* (citing 325 ILCS 5/7.16).

provide official transcripts of the tape-recorded administrative hearings. She transcribed the proceedings by listening to the recordings on the microcassettes. She was the only person who transcribed Cooney's DCFS administrative proceedings (but there is no evidence that Casady or Sosnowski knew this).

In early May 2007, Magnabosco completed transcripts from September 2006 proceedings; DCFS representatives had access to them on that same date (and *could have known* that Magnabosco had transcribed them). Cooney does not claim that these transcripts were "altered," however. (Cooney uses the term "alter" in sort of a special way, as we will explain below, and we use it as she does.) Thereafter, Magnabosco prepared transcripts for the proceedings held on October 25, 26, and 27, 2006, January 30, 2007, and February 13, 2007. These are the transcripts that were allegedly "altered." When Cooney reviewed them, she compared them with the Fishman transcripts and found discrepancies, which form the basis of her complaint here. Because of these discrepancies, the parties agreed to have the Fishman transcripts, rather than Magnabosco's transcripts, serve as the official transcripts of the administrative hearings. Four other prehearing conferences in the administrative appeal had not been transcribed by Fishman; the audiotapes from those proceedings were sent to DiGiovanni Court Reporters for transcription. Apparently, these DiGiovanni transcriptions also contained discrepancies when compared to Magnabosco's transcriptions.

Cooney filed a two-count complaint against the defendants. Count I alleged that they conspired to deprive her of her due process rights in violation of 42 U.S.C. § 1983. Count II alleged a state-law claim for intentional infliction of emotional distress.

With respect to her § 1983 claim, her theory is that the DCFS transcripts were "altered" by Magnabosco at Casady's and Sosnowski's direction, and that this caused extensive delay and expense on Cooney's part to convince the circuit court to use the Fishman transcripts as the official record.

The district court denied the defendants' motions to dismiss the complaint, concluding that the complaint stated a § 1983 claim and a claim for intentional infliction of emotional distress. *Cooney v. Casady*, 652 F. Supp. 2d 948, 958–59 (N.D. Ill. 2009). The court held that Cooney was not required to plead a meeting of the minds and was required only to indicate "the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Id.* at 957 (quotation and citation omitted). The court also concluded that Cooney alleged a sufficient constitutional injury, namely, a violation of her right to procedural due process by undermining her right to a fair hearing and delaying her ability to obtain a meaningful remedy in state court. *Id.* However, the court stated: "Let there be no mistake: plaintiff's conspiracy allegations have a distinctly paranoid *gestalt*, and it is unlikely that her claims have merit." *Id.* at 958. The defendants' motion for reconsideration was denied. *Cooney v. Casady*, 680 F. Supp. 2d 942, 943 (N.D. Ill. 2010).

Following discovery, the district court granted the defendants summary judgment on the § 1983 conspiracy claim and the claim for intentional infliction of emotional distress. *Cooney v. Casady*, 746 F. Supp. 2d 973 (N.D. Ill. 2010). The court reasoned:

> [P]laintiff has put forward no direct or sufficient
> circumstantial evidence of a conspiracy [among
> defendants]. Defendants have put forward
> undisputed evidence that neither Casady nor
> Sosnowski ever met Magnabosco, ever spoke to
> Magnabosco, or had any kind of communication
> with her whatsoever. Plaintiff's assertions that
> Casady and Sosnowski *could* have known
> Magnabosco's identity and contacted her is not
> supported by any evidence that they did so.

*Id.* at 975. The court rejected Cooney's claim that a jury should determine whether the discrepancies between the Fishman and Magnabosco transcripts evidenced a conspiracy among the defendants, explaining:

> Taking all these discrepancies together (and I
> have reviewed all of those listed in Exhibit 3 in
> detail), I cannot conclude that these discrepan-
> cies are sufficient to prove a conspiracy, espe-
> cially given the circumstances under which the
> Magnabosco transcripts were created (via
> microcassette tapes) and, most importantly,
> when there is no evidence that the three defen-
> dants ever met or communicated with each
> other. Based on this evidence, no reasonable jury
> could conclude that the defendants conspired
> together to alter the official transcript.

*Id.* at 976–77. Because the claim for intentional infliction of emotional distress was based on the same underlying conduct, the court concluded that summary judgment for the defen-

dants was proper because Cooney had "no proof of any conduct by defendants that was 'extreme and outrageous.'" *Id.* at 977–78 (citation omitted).

The district court denied the defendants' subsequent motion for attorneys' fees under 42 U.S.C. § 1988 and for fees and costs under Rule 11. *Orlando-Cooney v. Casady*, No. 09-C-1920, 2011 WL 995817 (N.D. Ill. Mar. 21, 2011). In addressing § 1988, the court noted that it "was an extremely close call" and concluded that Cooney's complaint, though meritless, was not frivolous because she had engaged "in some, albeit limited, investigation into this matter by engaging in a word-for-word comparison of the two transcripts." *Id.* at *2. The court rejected the defendants' contention that, even if Cooney's claim was not frivolous at the outset, it became frivolous when she failed to dismiss once discovery was completed. Finally, the court declined to award Rule 11 sanctions because none of the additional ten lawsuits Cooney had filed had been deemed frivolous and because the defendants had failed to provide any evidence (except their own say-so) that she filed suit to harass and harm them. *Id.*

## II. DISCUSSION

We review the grant of summary judgment de novo and give Cooney, the nonmoving party, "the benefit of all reasonable inferences that could be drawn from the record." *Citizens Health Corp. v. Sebelius*, No. 12-3924, 2013 WL 3957578, at *3 (7th Cir. Aug. 2, 2013). "Summary judgment is appropriate if there are no genuine issues of material fact such that the moving parties are entitled to judgment as a matter of law." *Id.* We review the denial of attorneys' fees under § 1988 and the

denial of sanctions under Rule 11 for an abuse of discretion. *Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co.*, 649 F.3d 539, 552 (7th Cir. 2011). "An abuse of discretion exists where no reasonable person could take the view espoused by the district court." *Leffler v. Meer*, 60 F.3d 369, 372 (7th Cir. 1995).

### A. The District Court Properly Granted Summary Judgment

"[T]o establish § 1983 liability through a conspiracy theory, 'a plaintiff must demonstrate that: (1) a state official and a private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents.'" *Lewis v. Mills*, 677 F.3d 324, 333 (7th Cir. 2012) (quoting *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007); *see also Whitlock v. Brueggemann*, 682 F.3d 567, 577 (7th Cir. 2012) ("There must be evidence of a concerted effort between a state actor and [a private] individual." (quotation and citation omitted)), *cert. denied sub nom. McFatridge v. Whitlock*, 133 S. Ct. 981 (U.S. Jan. 22, 2013).

The district court granted the defendants summary judgment on the ground that there was no evidence from which a reasonable jury could find a conspiracy among Casady, Sosnowski, and Magnabosco. Cooney argues that she presented sufficient circumstantial evidence creating a question of fact as to whether the defendants engaged in a conspiracy. She claims that the evidence, when viewed in her favor, "clearly raises the possibility that a jury can reasonably infer from the circumstances that: (a) the transcripts of [her] DCFS administrative hearings were altered; (b) the alterations in the tran-

scripts benefitted DCFS's case against [her] (c) Magnabosco was the only person who could have altered the transcripts; and (d) Casady and Sosnowski knew Magnabosco was transcribing [Cooney's] administrative hearings, and therefore knew to contact [Magnabosco] specifically in order to alter the official transcripts." The flaws in her reasoning are obvious: She even fails to argue that Casady, Sosnowski, and Magnabosco *actually* agreed to alter transcripts. Instead, Cooney asserts that there was knowledge and opportunity.

No reasonable jury could infer from the record that Casady and Sosnowski actually knew that Magnabosco would transcribe the challenged administrative hearings. Cooney reaches her contrary conclusion by showing that Magnabosco was the only person transcribing those hearings and that the completed transcripts of the September 2006 hearings were ready by May 7, 2007. The first defect in this reasoning is the lack of any evidence indicating that Casady or Sosnowski had knowledge that Magnabosco was the only person transcribing Cooney's administrative hearings. The second defect is that, even assuming such knowledge and opportunity, Cooney fails even to argue that Casady and Sosnowski actually communicated with Magnabosco. Rather, Cooney suggests that "there is a possibility" that they *could* have contacted her. Because "vague and conclusory allegations of the existence of a conspiracy are not enough to sustain a plaintiff's burden" at summary judgment, *Lewis*, 677 F.3d at 332, or even to survive a motion to dismiss, *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998), the mere suggestion of such a possibility cannot defeat summary judgment. Only speculation and conjecture could result in a finding that the defendants conspired to deprive Cooney of her

rights; this is not enough. *See Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003) ("Although a conspiracy certainly may be established by circumstantial evidence, we have stressed that such evidence cannot be speculative."); *cf. Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) ("[A]ll the plaintiffs have to go on is a collective hunch about the defendant's motives, which in itself will not survive a motion for summary judgment.").

Cooney seems to suggest that a plaintiff claiming a § 1983 conspiracy need not prove an agreement of some form among the defendants; she argues that "all that is required is that the participants share a 'general conspiratorial objective.'" Cooney's Resp. & Reply Br. 5 (citing *Hampton v. Hanrahan*, 600 F.2d 600, 621 (7th Cir. 1979), *rev'd in part*, 446 U.S. 754 (1980)). This argument reflects an ignorance of well-established principles of a civil conspiracy, unsupported by *Hampton*. Cooney selectively quotes from that case in which we explained:

> A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, *the principal element of which is an agreement between the parties* to inflict a wrong against or injury upon another, and an overt act that results in damage.
>
> … An express agreement among all the conspirators is not a necessary element of a civil conspiracy. The participants in the conspiracy must share the general conspiratorial objective,

> but they need not know all the details of the plan designed to achieve the objective or possess the same motives for desiring the intended conspiratorial result.

*Id.* at 620–21 (emphasis added, internal quotations and citations omitted). *Hampton* did not remove the requirement of a conspiratorial *agreement*. Cooney's suggestion to the contrary would eliminate this principal element of a conspiracy.

The district court was absolutely right: The record contains no evidence that Casady, Sosnowski, and Magnabosco conspired to deprive Cooney of a federal right. This is aside from the alleged discrepancies in the transcripts. Without proof of a conspiratorial agreement, the alleged discrepancies in the transcripts suggest at most negligence, on which § 1983 claims cannot be founded. *See, e.g., Loubser v. Thacker*, 440 F.3d 439, 442 (7th Cir. 2006).

Cooney argues that a comparison of Magnabosco's transcripts to the Fishman transcripts demonstrates that the former were intentionally "altered" and that the district court improperly weighed the evidence in concluding otherwise. Yet no reasonable jury could infer that Magnabosco intentionally "altered" transcripts. At oral argument Cooney clarified that her claim is not that the transcripts were altered—she has no evidence of prior, unaltered versions of the transcripts—but rather, that the hearings were erroneously transcribed. As the district court found, and the record supports, there is no evidence that the portions of the transcripts indicated as inaudible to Magnabosco, who transcribed the proceedings from the microcassette recordings, were in fact audible to

anyone else transcribing from the same recordings. The fact that Magnabosco has no background in medical terminology further supports the conclusion that alleged errors (whether "inaudibles" or misheard testimony) in her transcripts may have been affected by her lack of knowledge. In no way does it raise a reasonable inference that Casady and Sosnowski directed Magnabosco to "alter" the transcripts, especially when there is no evidence of any communication between them.

Cooney suggests that an independent court reporter listened to the same tapes as Magnabosco and did not find any of the recordings inaudible, but she is comparing apples to oranges. She is relying on the DiGiovanni transcripts of different hearing dates than the Magnabosco transcripts at issue. While it may be true that the DiGiovanni transcripts of prehearing dates also contained discrepancies when compared to Magnabosco's transcripts *of the same prehearing dates*, that has no bearing whatsoever on the Magnabosco transcripts at issue. (And we note that Cooney does not claim that Magnabosco's transcripts of the prehearing dates were "altered.")

Furthermore, while some of the discrepancies between the Magnabosco transcripts and Fishman transcripts may have benefitted DCFS's case against Cooney, some of them did not. For example, as Cooney admitted in her response to the defendants' statement of undisputed material facts, in one instance, Magnabosco's transcript reads:

> MS. CASADY: When you refer to illness induced in [Cooney's son], what illnesses are you refer- ring to and induced by whom?

> DR. ROSSITER: Well an example, the delusional disorder, (inaudible) …

Whereas Fishman's transcript reads:

> Q. When you refer to illnesses that were induced in [Cooney's son], what illnesses are you referring to and induced by whom?
>
> A. Well, for example, the first and most important illness that I think was induced was a delusional state, delusional disorder that was induced by his mother and to a lesser extent his grandparents.

And in some cases, the substance of the omitted witness testimony that is favorable to Cooney is contained elsewhere in the transcripts. For example, as again admitted by Cooney, she claims that Magnabosco omitted testimony in which a witness admitted to having no "expertise or medical training," in order to bolster the witness's credibility; however, the witness's preceding testimony is accurately reflected in Magnabosco's transcript:

> Q. You don't have any medical background for doing this?
>
> A. Absolutely not.

As in the district court, Cooney tries to make much of the fact that Magnabosco's transcript indicates that a witness (Dr. Paller) testifying about her son's lesions used the term "factitious" (meaning intentionally produced), whereas the Fishman transcript indicates that the word used was "fictitious" (false). Cooney alleges the transcript was "altered" to

support DCFS's claim that her son was self-inducing his injuries because of her influence. Yet Cooney has admitted that Dr. Paller testified that although he didn't know where the son's lesions were coming from, he thought that "these are ulcers that either he or somebody else is inducing."

No reasonable jury could infer a conspiracy from the mere fact of the discrepancies in the transcripts. This conclusion is bolstered by the undisputed evidence that neither Casady nor Sosnowski ever communicated with Magnabosco. Because Cooney failed to produce sufficient evidence from which a reasonable jury could infer a conspiracy, the defendants were entitled to judgment as a matter of law on the § 1983 claim. And because she had insufficient evidence to withstand summary judgment on her § 1983 claim, she also had insufficient evidence with respect to her claim for intentional infliction of emotional distress. She appears to acknowledge as much in her briefs on appeal. Therefore, the district court properly granted summary judgment to the defendants.

### B. The District Court Did Not Abuse Its Discretion in Denying Defendants' Request for Fees, Costs, and Sanctions

The defendants petitioned for attorneys' fees under § 1988 and Rule 11 sanctions. Section 1988 provides that in § 1983 actions "the court, in its discretion, may allow the prevailing party … a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). The statute commits the decision whether to award attorneys' fees to the district court's sound judgment. *Khan v. Gallitano*, 180 F.3d 829, 837 (7th Cir. 1999). We review

the denial of fees in this context for abuse of discretion, although we review legal questions de novo. *Id.*

Prevailing defendants may be awarded attorneys' fees only if the plaintiff's "claim was frivolous, unreasonable, or ground- less, or if the plaintiff continued to litigate after it clearly became so." *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978); *see also Hughes v. Rowe*, 449 U.S. 5, 14–15 (1980) (per curiam) (applying *Christianburg* under § 1988). The plaintiff's action must be groundless or without foundation (i.e., meritless), but "[t]he fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees." *Hughes*, 449 U.S. at 14. "There is a significant differ- ence between making a weak argument with little chance of success … and making a frivolous argument with no chance of success," and "it is only the latter that permits defendants to recover attorney's fees" under § 1988. *Khan*, 180 F.3d at 837.

When considering the defendants' petition for fees, the district court articulated the proper legal rules and concluded that, although it "was an extremely close call," Cooney's claim was not frivolous but simply meritless. *Orlando-Cooney*, 2011 WL 995817, at *2. The court acknowledged that the only evidence she had was the apparent discrepancies between the transcripts, but it found that she "did engage in some, albeit limited, investigation into this matter by engaging in a word- for-word comparison of the two transcripts." *Id.* The court also rejected the defendants' view that Cooney continued to litigate after the case became frivolous once discovery was complete, again finding that it was "a very close call." *Id.*

The defendants raise several arguments challenging the district court's conclusion but they have conflated their § 1988 attorneys' fees analysis with their Rule 11 sanctions analysis (as they did in the district court). Nonetheless, it appears that they identify the following as support for an award of fees: (1) Cooney's reliance on a comparison of the transcripts itself shows she could not reasonably believe a conspiracy had occurred because parts of the Fishman transcripts were more damaging to her than the Magnabosco transcripts—i.e., the suit is frivolous; (2) Cooney did not act pro se but instead had ghost counsels' help throughout; and (3) Cooney has a history of filing frivolous suits against participants in the state custody and DCFS proceedings.

Cooney responds that she had adequate circumstantial evidence of a conspiracy, but just not enough to preclude summary judgment, which she contests on appeal, *see supra*. However, as discussed, the only "evidence" that she had to prove her claim was the inconsistencies between the transcripts. Yet the district court determined that Cooney's complaint was not frivolous. It also found that the defendants offered nothing other than their own say-so to show that Cooney filed the case to harass and harm them. Under similar circumstances we have affirmed the denial of the defendants' fee petition. In *Springer v. Durflinger*, 518 F.3d 479 (7th Cir. 2008), parents who were disgruntled with a high school softball coach filed a § 1983 suit, alleging baseless First Amendment retaliation claims against a school district. *Id.* at 480. Even though the parents "proffer[ed] no evidence whatsoever" of retaliation, *id.* at 483, we affirmed the denial of the defendants' fee petition:

> The district court specifically noted that the complaint was neither frivolous, nor brought in bad faith. If we were in the district court's position, considering the facts in the first instance, we may well have come to a different conclusion regarding an award of attorneys' fees. It may have been error—considering the deficiency of evidence—to allow this case to proceed to the discovery phase in the first place. But given that the parents did make it to discovery, they cannot be faulted for trying, but ultimately failing, to gather sufficient evidence of retaliation.

*Id.* at 486.

Here, as in *Springer*, the district court found that Cooney's complaint was not frivolous and that the defendants had no evidence of bad faith, and thus allowed the case to proceed to discovery and summary judgment. If we were to decide the fee issue in the first instance, we might have reached a different conclusion than the district court. (Indeed, had the district court decided to award attorneys' fees, we doubt that decision would have been an abuse of discretion.) But the district court's decision should be accorded appropriate deference. The district court presided over the case for a period of time from the pleading stages and pretrial discovery up to summary judgment and beyond. Its intimate involvement with the case and parties positioned it well to make a thoughtful exercise of discretion regarding the defendants' request for fees (and sanctions). And Cooney should not be faulted for proceeding with her case once she was given the chance to do so with the denial of the motions to dismiss. *Cf. Nisenbaum v. Milwaukee*

*Cnty.*, 333 F.3d 804, 809 (7th Cir. 2003) ("[Defendant] prevailed at trial, and the magistrate judge's decision that a trial was essential precludes any shifting of trial costs back to [plaintiff].").

Regarding Cooney's less-than-pro-se status, it seems that she was aided by "ghost counsel" along the way. *Cf. Cooney*, 652 F. Supp. 2d at 956–57 (stating "that plaintiff—a non-lawyer representing herself—has done a commendable job fending off defendants' various challenges, responding to their attacks with lucid arguments and citations to pertinent (and often persuasive) authorities"). Yet the defendants do not use this assistance to support any argument for fees or sanctions; rather, they assert that ghost counsel should be sanctioned also. But § 1988 does not authorize an award of attorneys' fees against a party's lawyers. *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 761 (1980). As for Cooney's litigation history, she may have abused the system by filing many suits but the district court found that none of those suits were frivolous. This conclusion is accorded deference. The defendants do themselves a disservice by arguing that the decision in *Cooney v. Rossiter* recognized that Cooney's related claims "smack[ed] of harassment." It did not. The decision held only that the complaint did not meet the "high standard of plausibility." 583 F.3d at 971.

As for Rule 11 sanctions, the purpose of Rule 11 is to deter baseless filings in the district court. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). The rule is not a fee-shifting measure—it provides only that a court may impose an "appropriate sanction" for a violation of Rule 11(b). Fed. R. Civ. P. 11(c)(1); *see Bus. Guides, Inc. v. Chromatic Commc'ns*

*Enters., Inc.*, 498 U.S. 533, 553 (1991) (former version of Rule 11). The decision to grant or deny a motion for Rule 11 sanctions is within the sound judgment of the district court and will be disturbed only where the court abuses its discretion. *Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928, 933 (7th Cir. 1989). For the same reasons we affirmed the district court's denial of fees under § 1988, we affirm its decision to decline Rule 11 sanctions. Moreover, the defendants fail to identify the specific pleadings or filings that they contend violated Rule 11(b). This provides another reason to affirm the district court's exercise of discretion in this case.

### C. Rule 38 Sanctions

However, the defendants' request for Rule 38 sanctions is a different matter. "If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." Fed. R. App. P. 38. "Under Rule 38, we must first determine if the appeal is frivolous, and if we find it is, we have discretion to award sanctions or decline to do so." *Smeigh v. Johns Manville, Inc.*, 643 F.3d 554, 565 (7th Cir. 2011) (citation omitted). "An appeal is frivolous when the result is obvious or when the appellant's argument is wholly without merit." *Id.* (quotation and citation omitted). "When an appeal rehashes positions that the district court properly rejected, or when it presents arguments that are lacking in substance and 'foreordained' to lose, the appeal is frivolous." *Berwick Grain Co. v. Ill. Dep't of Agric.*, 217 F.3d 502, 505 (7th Cir. 2000) (citations omitted).

Cooney's appeal is just such an appeal. She merely reargues the arguments that the district court properly rejected. And she does so despite the district court's clear warning that her complaint teetered on the line separating the frivolous from the meritless. Although *Springer* may preclude a finding that the district court abused its discretion here, it provides ample support for an award of sanctions under Rule 38. There, after affirming the district court's denial of fees and costs, we said:

> [W]e are not at all sympathetic to the [plaintiffs'] appeal. They have never been able to point to one shred of evidence demonstrating retaliation. To insist that there is a genuine issue of material fact in this case is beyond the pale, and an appeal arguing as much is frivolous. … Appeals such as this not only bring the courts into disrepute but also divert scarce judicial time from other litigants who have serious claims or defenses.

*Springer*, 518 F.3d at 486 (quotation, citation, and alteration omitted).

Like the plaintiffs in *Springer*, Cooney "may have caught one break from the district court, but we are not inclined to give [her] another one." *Id.* She has no evidence of a conspiracy. We reiterate that had the district court decided to make an award of attorneys' fees to the defendants under § 1988, we would not be inclined to find an abuse of discretion given the record in this case.

Cooney asserts that Fed. R. App. P. 38 sanctions are inappropriate because the standard of review is de novo. A similar argument was rejected in *Smeigh*, where the plaintiff's

arguments had been properly rejected by the district court yet the plaintiff asserted the same arguments on appeal (nearly verbatim):

> Smeigh's counsel responded at oral argument that our review is de novo and he can raise the same arguments to this court as below and isn't permitted to raise new arguments. Although true, he certainly could have explained why the district court's decision was erroneous—for example, he could have explained how Smeigh can succeed without asserting vicarious liability—or, if he has no explanation, he could have decided not to appeal his conversion claim.

643 F.3d at 566. The court ultimately declined to impose monetary sanctions because, unlike Cooney's appeal, Smeigh's case was "too close to the line": "Smeigh raised a non-frivolous argument (retaliatory discharge) on appeal, and JM had to expend only minimal effort in responding to Smeigh's frivolous conversion claim." *Id.*

Rule 38 requires that the party seeking sanctions file a separate motion or that the court give notice and an opportunity to respond. Fed. R. App. P. 38. The defendants did not file a separate motion; rather, they merely raised the issue in their brief. The Advisory Committee Note accompanying Rule 38 states: "A statement inserted in a party's brief that the party moves for sanctions is not sufficient notice. … Only a motion, the purpose of which is to request sanctions, is sufficient. If there is no such motion, notice must come from the court." *Id.*, advisory committee's note (1994 amendments). We do so here:

We order Cooney to show cause, within 15 days after the conclusion of this appeal, as to why she should not be required under Rule 38 of the Federal Rules of Appellate Procedure to pay the defendants' costs and reasonable attorneys' fees on appeal.

**III.    CONCLUSION**

We AFFIRM the district court's judgment and we ORDER Cooney to show cause why she should not be sanctioned for filing this frivolous appeal.